Harry PLUMMER, Petitioner,

v.

SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Respondent.

No. 90–880V.

United States Claims Court.

Sept. 30, 1991.

Walter S. Kyle, Boston, Mass., for petitioner.

Mary Hampton Mason, with whom were Asst. Atty. Gen. Stuart M. Gerson, Helene M. Goldberg, and John Lodge Euler, Dept.

of Justice, Washington, D.C., for respondent.

## OPINION

ROBINSON, Judge:

This action is before the court on petitioner's Motion for Review of Special Master LaVon French's April 3, 1991 Decision [1] awarding compensation to petitioner, Harry Plummer, under the National Childhood Vaccine Recovery Act [2] (the Vaccine Act). Although petitioner agrees that he is entitled to compensation, he disagrees with the amount awarded and objects to the special master's decision to forego a hearing on damages. Accordingly, Mr. Plummer requests that the court remand the petition and order the special master to hold a hearing on damages.

### Procedural History

Mr. Plummer filed a claim under the National Vaccine Injury Compensation Program (the Vaccine Program) on September 5, 1990. The petition asked for compensation for injuries allegedly sustained as a result of polio contracted from his granddaughter who had recently received an oral polio vaccine.[3] In its report filed December 3, 1990, respondent agreed that Mr. Plummer's condition met the established criteria for demonstrating vaccine related poliomyelitis, and thus, warranted compensation.[4]

Each party proposed one or more life care plans for the future vaccine-related injuries of Mr. Plummer. Petitioner's initial life care plan was prepared by rehabilitation counsellor Mark Litvin, Ph.D. and was filed on January 10, 1991. Dr. Litvin based his recommendations on Mr. Plummer's medical records as well as a personal interview. On January 4, 1991, Special Master French issued an order directing petitioner to supply additional details relative to items requested in his life care plan. Specifically, petitioner was ordered to provide information as to the need for each item requested and the identity of the person recommending such item. Mr. Plummer's supplemental report was filed on January 28, 1991. It included a statement from Dr. Henning Mehrens, Mr. Plummer's family practitioner, discussing his current medical condition, and an outpatient assessment of Mr. Plummer, dated January 11, 1991, performed by Gregg Small M.D. of the Walker Institute.[5] Subsequently, petitioner filed a video tape, illustrating his current physical condition and showing his living quarters. On January 31, 1991, petitioner filed another supplemental life care plan which further detailed his claim.

Respondent's expert, Nancy Ekberg, R.N., reviewed petitioner's life care plan, examined the medical records, and conducted her own interview with Mr. Plummer. Respondent concluded that an alternative plan would better suit petitioner's needs. Consequently, respondent submitted Ms. Ekberg's recommendations on February 5, 1991.

On February 20, 1991, Special Master French held a detailed discussion with the parties. Special Master French addressed the merits of each life care plan, and advised them of her intention to cancel a previously scheduled hearing, to rule on the written evidence without a hearing, and to accept respondent's recommendations as to reasonable compensation. She then gave the parties until February 28, 1991 to

---

1. Motions for Review are brought pursuant to RUSCC Appendix J, which provides the conditions for review of decisions of special masters rendered pursuant to the National Vaccine Injury Compensation Program.

2. The statutory provisions governing the Vaccine Act are found at 42 U.S.C. § 300aa–1 *et seq.* (West Supp.1990).

3. On or about November 22, 1979, petitioner attended Mavis, his granddaughter, who had received her polio vaccine on November 3,

1979. On December 4, 1979, Mr. Plummer was hospitalized, suffering almost complete paralysis of his lower extremities. After testing, his doctors diagnosed a poliovirus infection of the central nervous system.

4. *See* Respondent's Report December 4, 1990, Medical and Legal Analysis at 3.

5. The Walker Institute is a rehabilitation center specifically designed to treat patients such as Mr. Plummer with central nervous system disorders.

submit any supplemental evidence regarding those items in dispute. On that date, Mr. Plummer filed a list of objections to the respondent's life care recommendations and requested a damages hearing. At another status conference held on March 6, 1991, Special Master French refused to grant a hearing but kept the evidentiary record open for an additional two weeks. Consequently, another supplemental life care report was filed by petitioner on March 21, 1991, and respondent's reply to that report was filed on April 3, 1991.

### Petitioner's Objections

Petitioner objects to the special master's decision not to allow a hearing on three grounds. First, petitioner contends that he was denied the opportunity to fully present his case in violation of RUSCC Appendix J, Special Master Rule II 3(b).[6] Petitioner asserts that although the special master is not routinely required to conduct formal evidentiary hearings on every matter in the case, "common sense dictates a hearing on essentially contested matters."[7] Petitioner next argues that Special Master French further violated RUSCC Appendix J, Special Master Rule II 3(b) by failing to create a record sufficient to allow the court an opportunity for review.[8] Petitioner's final objection to the special master's decision to forego a hearing on damages is that he has been denied an opportunity to fully and fairly present his case due to the special master's inappropriate attempt to conserve judicial resources and, accordingly, that he has been denied due process.

### DISCUSSION

 Pursuant to 42 U.S.C. § 300 aa–12(e)(2)(B)[9], the decision of a special master may not be disturbed by the court unless it is found to be arbitrary, capricious or an abuse of discretion. Far from being a self-defining term, "abuse of discretion" may be given meaning through an examination of the statute giving the special master authority to act. Under the Vaccine Act, "review of the special master's decision by the Claims Court is expected to be the exception, rather than routine procedure." *See Hale v. Secretary of Health and Human Services*, 22 Cl.Ct. 403, 405 (1991). Accordingly, a special master must be given considerable deference in decisions on claims for compensation.

 By providing a petitioner the means to seek a review of a special master's decision, Congress must have intended that the Claims Court, in its review, evaluate any such decision diligently and completely. However, the court's inquiry may not invoke substituting its own judgment for that of the special master. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–16, 91 S.Ct. 814, 822–24, 28 L.Ed.2d 136 (1971). Furthermore, its review is restricted to the administrative record. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).[10]

---

6. RUSCC Appendix J, Special Master Rule II 3(b) provides that "(t)he Special Master shall determine the nature of the proceedings, with the goal of making the proceedings expeditious, flexible, and less adversarial, while at the same time, affording each party a full and fair opportunity to present its case and creating a record sufficient to allow review of the special master's decision."

7. Petitioner's Motion for Review, May 3, 1990 at 4.

8. *See* Petitioner's Motion for Review, May 3, 1990, note 6.

9. 42 U.S.C. § 300aa–12(e)(2)(B) provides that: (u)pon the filing of a motion under paragraph (1) with respect to a petition, the United States Claims Court shall have jurisdiction to undertake review of the record of the proceedings and may thereafter— (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law and issue its own findings of fact and conclusions of law.

10. The standard arbitrary, capricious or an abuse of discretion is based on one of the criteria established by the Administrative Procedure Act (APA). 5 U.S.C. § 706 (1988). Accordingly, *decisions interpreting the APA standard have application in the review of a special master's decision to the extent that they are consistent with the Vaccine Program. See Hale v. Secretary of Health and Human Services*, 22 Cl.Ct. 403, 406 (1991).

In sum, Special Master French's decision to forego a hearing on damages may not be set aside if the record before the court provides a reasonable basis for such a finding.

■ The rules on hearing requirements under the Vaccine Act are clear. A special master is statutorily obligated to "afford all interested persons an opportunity to submit relevant written information." 42 U.S.C. § 300aa–12(d)(3)(B)(iv). Additionally, a special master is to "consider all relevant, reliable evidence, governed by the principles of fundamental fairness to both parties." RUSCC Appendix J, Special Master Rule II 8(b). However, a special master is not required to conduct an evidentiary hearing where one is not shown to be necessary. Rather, Congress specifically stated that the established rules pertaining to the Vaccine Act shall "include the opportunity for parties to submit arguments and evidence on the record without requiring routine use of oral presentations, cross examinations, or hearings." 42 U.S.C. § 300aa–12(d)(2)(D). Furthermore, 42 U.S.C. § 300aa–12(d)(3)(B)(v) provides that a special master "may conduct such hearings as may be reasonable and necessary." Congress, through its use of the word "may," indicates that a special master has the discretion to convene an evidentiary hearing, but did not dictate that that authority must be exercised in every case. Conversely, Congress intended that the special master "determine the nature of the proceedings with the goal of making the proceedings expeditious, flexible, and less adversarial." RUSCC Appendix J, Special Master Rule II 3(b). Given the statutory language, the court adopts the view that a special master is not required to hold an evidentiary hearing, nor does the petitioner have any right to demand one. *See Hale v. Secretary of Health and Human Services*, 22 Cl.Ct. 403, 409 (1991).

In this case, Mr. Plummer relies on House of Representatives Report No. 908 to support his first objection to the special master's decision not to allow a hearing. That report states that "the Committee expects the Special Master to be vigorous and diligent in investigating factual elements necessary to determine the validity of the petitioner's claim." H.R.Rep. No. 908, 99th Cong.2d Sess., pt. 1 at 5, *reprinted in* 1986 U.S.Code Cong. & Admin.News 6287, 6344, 6358. Petitioner maintains a hearing on damages was necessary to determine the soundness of Mr. Plummer's life care plan. Consequently, petitioner argues that Special Master French failed to vigorously and diligently investigate the facts surrounding petitioner's claim when she denied Mr. Plummer a hearing on damages. Therefore, petitioner concludes that the special master violated the spirit and letter of the law.

■ The central issue before Special Master French was which life care plan better suited the needs of Mr. Plummer. To determine whether a hearing was necessary to reach a reasonable resolution of that issue, the court must look to the written record. "When all material facts are developed in the motion papers, a full trial is useless. 'Useless' in this context means that more evidence than is already available in connection with [the motion] could not reasonably change the result." *Hale v. Secretary of Health and Human Services*, 22 Cl.Ct. 403, 408 (1991). In this case, the evidentiary record contains a life plan from both petitioner and respondent, three supplemental life plans submitted by petitioner, information from Mr. Plummer's treating physicians, as well as a videotape of Mr. Plummer demonstrating his range of motion and the limitations of his current residence. Moreover, not only did both parties submit a life care plan prepared by experts in the field,[11] but the court allowed

---

**11.** Petitioner admitted that Special Master French had before her a "detailed, thorough * * * itemized, cost-effective life care plan prepared by a highly qualified analyst," which had been provided by Mr. Plummer's counsel. Petitioner's Motion for Review, p. 6. Although petitioner charges that respondent's plan was "total-

ly incorrect," and that respondent's expert was professionally unqualified to give opinions concerning Mr. Plummer's vaccine-related costs, he failed, despite having ample opportunity, to provide any written evidence supporting those charges.

petitioner's counsel several opportunities to present evidence on petitioner's behalf.[12] The record was more than sufficient to allow a decision-maker to reach a fair, reasoned and informed determination. The court, therefore, finds that Special Master French's decision to forego an evidentiary hearing in no way impinged on petitioner's ability to fully and fairly present his case.

Additionally, the court recognizes that Special Master French has decided several cases involving polio injuries and accepts her assertion that, within her experience, "no new or unfamiliar damages issues" were raised. *Plummer v. Secretary, Department of Health and Human Serv.*, No. 90–880V, p. 3 *slip op.*, 1991 WL 59446 (Cl.Ct.Sp.Mstr. April 3, 1991). Accordingly, the court finds that it was appropriate for her to rely on her expertise in determining that she had sufficient evidence on the written record to reach a reasonable conclusion as to which life care plan was best to concomitantly meet the confines of the Vaccine Act and the medical needs of Mr. Plummer. In sum, because an evidentiary hearing on damages was neither required nor necessary, the court rejects petitioner's argument that Mr. Plummer was denied an opportunity to fully present his case.

Petitioner next argues that Special Master French further violated RUSCC Appendix J, Special Master Rule II 3(b) by not "creating a record sufficient to allow review of the special master's decision," and therefore, that the case should be remanded for additional evidence. In support of this allegation, petitioner maintains that the special master failed to cite the "several cases involving polio injury" that were relied upon in Plummer's case, that there is no evidence in the record regarding Plum-

mer's entitlement to compensation for pain and suffering, and that the special master made no reference as to why Mr. Plummer should not testify as to the requirements of his life care plan.

With regard to cases involving polio injury, petitioner is presumably referring to Special Master French's reference to her experience as a special master. Special Master French was appointed to that position on January 16, 1989, and entered on duty the same day. Thus she has had over two and one-half years of sitting as a special master in vaccine cases. Therefore, the court accepts her assertion that she has previously decided cases involving polio injuries, and will not remand this case to require that she cite such cases by name. In any event, all such cases are a matter of public record, and petitioner had ample opportunity to provide evidence showing Special Master French's lack of experience as a special master involving polio injuries.[13]

■ 42 U.S.C. § 300aa–15(b)(2) provides that (c)ompensation awarded under the [Vaccine] Program * * * may also include an amount * * * for pain and suffering. Petitioner's argument that the court should have addressed pain and suffering is unfounded. Although § 300aa–15(b)(2) gives a special master the discretion of providing an amount for pain and suffering damages, neither the life care plans submitted by petitioner or the one provided by respondent contains any mention of Mr. Plummer's need or desire for an award based on pain and suffering. Petitioner simply cannot now, at this late date, raise a new issue in an attempt to persuade the court that Special Master French failed to create a sufficient record for review.

---

**12.** At least as early as the February 20, 1991 status conference, petitioner was notified that the court intended to rule on the written evidence without a hearing. At that conference, the court gave the parties additional time to supplement the record relative to items of care over which there were disagreements. *Plummer v. Secretary, Department of Health and Human Serv.*, No. 90–880V, p. 2 *slip op.*, 1991 WL 59446 (Cl.Ct.Sp.Mstr. April 3, 1991). After petitioner timely filed on February 27, 1991, a list of objections to respondent's recommendations, the court, over respondent's objections, kept the

record open an additional two weeks. Petitioner then filed its Supplemental Life Care Report of Mark Litvin, Ph.D. dated March 21, 1991. In total, petitioner submitted three supplemental versions of its original life care plan.

**13.** The court notes, additionally, that Special Master French also had available for her review and consideration, decisions of other special masters which involved polio injury claims and the damages awarded in such cases.

■ With regard to petitioner's assertion that Mr. Plummer should have been given an opportunity to testify as to the requirements of his life care plan, the court in its foregoing analysis has amply shown that oral testimony was not necessary and that Special Master French had before her a written record sufficient to make a factually sound and reasonably-based decision on which life care plan to adopt. Accordingly, the court finds that Special Master French did not fail to create a record sufficient to allow review by the court and, therefore, did not commit reversal error.[14]

Petitioner's final objection to the special master's decision to forego a hearing on damages is that he has been denied an opportunity to fully and fairly present his case due to the special master's inappropriate attempt to conserve judicial resources and, accordingly, that he has been denied due process. In support of this position, petitioner relies in part on the General Order of Gary J. Golkiewicz, Chief Special Master, April 22, 1991 which states that "the number of cases filed and the timing of the filings has overwhelmed the Court's systems and resources as well as those of respondent."[15] Petitioner maintains that while he is fully prepared to "patiently await the orderly and fair resolution of his petition,"[16] he is not ready to allow the special master to put the Act's speedy mandate to her own use. Petitioner asserts that such action by the special master is contrary to the intentions of the Act and is repugnant to the 14th Amendment of the United States Constitution.[17]

Petitioner's allegation mischaracterizes the court's decision. Nowhere in that decision did Special Master French state that she was foregoing a hearing because of the overwhelming number of cases before the Office of the Special Masters. She merely pointed out that "[t]o require a hearing in all cases *when sufficient evidence is contained in the record on which to base an informed decision* would constitute judicial waste." (emphasis added). *Plummer v. Secretary, Department of Health and Human Serv.*, No. 90–880V, p. 2 *slip op.*, 1991 WL 59446 (Cl.Ct.Sp.Mstr. April 3, 1991). Petitioner may be willing to "patiently await" a hearing on damages, but holding an *unnecessary* hearing wastes judicial time and money, and seriously prejudices other petitioners waiting their turn. Accordingly, petitioner's objection in this regard is also without merit.

## V. CONCLUSION

In this case, after receiving the written evidence, and conducting a status conference, the special master decided that an informed decision could be rendered on the record without a hearing. Upon advising the parties of this decision, the special master kept the record open to facilitate the filing of supplementary materials to either rebut or clarify materials already in the record. Although petitioner submitted additional information, none of these new documents offered proof that the disallowed items were in fact medically necessary for Mr. Plummer. In light of the fact that the special master, on numerous occasions, af-

**14.** Petitioner emphasizes the importance of RUSCC Appendix J, Special Master Rule II 3(b) by citing to *Potter v. Secretary of Health and Human Services*, 22 Cl.Ct. 701 (1991), which upheld the provision of the rules requiring that a special master create a sufficient record to allow for review. In *Potter*, the court stated that "the special master must articulate an evidentiary basis for award of compensation that is 'sufficient to allow review of the special master's decision.'" 22 Cl.Ct. 701, 705 (1991). The facts in *Potter* are completely different from those in the case at bar. In *Potter*, the special master *sua sponte* awarded petitioners a $50,000 fund to provide for unforeseen contingencies. The reviewing court found that "[t]he special master gave no other explanation for the award, and,

indeed, acknowledged that petitioners had not requested such relief." 22 Cl.Ct. 701, 705 (1991). In contrast, Special Master French properly based her decision in this case solely on the evidence provided in the written record.

**15.** Petitioner's Motion for Review App. Tab 2 at 1.

**16.** Petitioner's Motion for Review App. Tab 2 at 8.

**17.** *See, Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975), *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and *Rosa v. Bowen*, 677 F.Supp. 782, 785 (D.N.J.1988).

forded petitioner the opportunity to submit such evidence, and in consideration of the fact that petitioner was, in that time unable to support his claims for additional compensation, the court finds that the special master's actions did not contravene the 14th Amendment of the United States Constitution, or otherwise constitute an abuse of her discretion in denying petitioner an evidentiary hearing.

Special Master French's Decision is affirmed, and Petitioner's Motion for Review is denied. The Clerk shall enter judgment in accordance with the special master's April 3, 1991 decision.