Dante ULTIMO, an incompetent, by his mother and representative, Martha ULTIMO, Petitioner,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–2045V.

United States Court of Federal Claims.

April 6, 1993.

Clifford J. Shoemaker, Vienna, VA, for petitioner.

Eleanor A. Barry, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, Helene M. Goldberg, John Lodge Euler, and Charles R. Gross, for respondent.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on petitioner's motion for review of Chief Special Master Gary J. Golkiewicz's December 11, 1992, decision denying her compensation under the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C.A. §§ 300aa–1—300aa–34 (West 1991 & Supp. 1992) (Vaccine Act). For the reasons set forth below, the court denies petitioner's motion for review and affirms the Chief Special Master's decision.

## FACTS

The facts of this case have been set forth in the Chief Special Master's decision, published as *Ultimo v. Secretary of HHS*, No. 90–2045V, 1992 WL 392629 (Fed.Cl. Spec.Mstr. Dec. 11, 1992). Therefore, the court will only repeat facts as necessary for disposition of petitioner's motion.

On January 11, 1993, petitioner moved the court for review of the Chief Special Master's decision, raising four objections: first, that the Chief Special Master erred in not finding that the manifestation of the Table injury occurred within three days after the vaccine administration; second, that the Chief Special Master incorrectly stated that there was no evidence of further afebrile seizures within one year of the vaccination; third, that petitioner demonstrated causation in fact as well as demonstrating a Table case; finally, that the Chief Special Master "has demonstrated a

consistent pattern of bias in [similar] cases, making them more adversarial than Congress had intended and requiring a higher level of proof than a jury could possibly require." On February 10, 1993, respondent filed a memorandum in response to petitioner's motion for review.

## DISCUSSION

### I. *Standard of Review*

■ In reviewing the decision of a special master, this court has authority to "set aside any findings of fact or conclusion[s] of law ... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). By the plain language of the statute, *de novo* review of legal conclusions or factual findings is not appropriate. *Stotts v. Secretary of HHS*, 23 Cl.Ct. 352, 358–61 (1991); *see Hines v. Secretary of HHS*, 940 F.2d 1518, 1523–24 (Fed.Cir.1991); *Murphy v. Secretary of HHS*, 23 Cl.Ct. 726, 729–30 (1991). " '[A]rbitrary and capricious' is a highly deferential standard of review." *Hines*, 940 F.2d at 1528. A reviewing court may not substitute its own judgment for that of a special master if the special master has considered all relevant factors, and has made no clear error of judgment. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Hyundai Elecs. Indus. v. United States Int'l Trade Comm'n*, 899 F.2d 1204, 1209 (Fed.Cir.1990); *Gamalski v. Secretary of HHS*, 21 Cl.Ct. 450, 451–52 (1990). Accordingly, this court must grant the Chief Special Master wide latitude in reviewing the propriety of his denial of petitioner's claim.

### II. *Recovery Under the Vaccine Act*

For petitioner to recover under the Vaccine Act, a showing of causation must be established in one of two ways. Causation is presumed if petitioner supports, with medical records or expert testimony, a claim of an injury listed on the Vaccine Injury Table (Table), 42 U.S.C. § 300aa–14(a), and shows by a preponderance of the evidence that the injury occurred within the time period described by the Table. 42 U.S.C. § 300aa–13(a)(1)(A). If these requirements are met, petitioner will recover unless respondent alternatively shows by a preponderance of the evidence that the injury resulted from factors "unrelated to the administration of the vaccine described in the petition." 42 U.S.C. § 300aa–13(a)(1)(B).

■ Alternatively, a petitioner may recover by showing actual causation, a more difficult route to recovery. This method requires petitioner to prove by a preponderance of the evidence that a vaccination caused the alleged injury. Compensation for non-Table injuries is authorized under 42 U.S.C. § 300aa–11(c)(1), and includes any "illness, disability, injury, or condition" not listed on the Table, or not meeting the Table's requirements. *See* 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I)–(II). To recover, scientific certainty that a vaccination caused an injury is not required. *Bunting v. Secretary of HHS*, 931 F.2d 867, 873 (Fed.Cir.1991). If "a reputable medical or scientific explanation" is used to support a proposed theory of causation, a *prima facie* case will be established. *McClendon v. Secretary of HHS*, 24 Cl.Ct. 329, 334 (1991) (quoting *Strother v. Secretary of HHS*, 18 Cl.Ct. 816, 820 (1989)). The burden then shifts to respondent to show by a preponderance of the evidence that something other than the vaccination caused the reaction. *McClendon*, 24 Cl.Ct. at 334. Here, petitioner attempted to prove both a Table injury and actual causation. The Chief Special Master determined that petitioner had not met her burden of proof under either method of recovery. *Ultimo*, 1992 WL 392629, at *4.

### III. *Petitioner's Objections*

#### A.

■ The Chief Special Master found that Dante Ultimo's first seizure did not occur until approximately 78–80 hours after his receipt of the vaccination, *id.* at *1, and that the evidence showed that the earliest Dante could have seized was 75 hours after the vaccination. *Id.* The court sustains this factual finding. Petitioner argues that

the Chief Special Master erred in applying a literal definition of three days to determine whether or not Dante's seizure occurred within the statutorily prescribed time limit for demonstration of a Table injury, rather than applying a legal definition of three days. That is, petitioner argues that "3 days," 42 U.S.C. § 300aa–14(a)(I), does not mean 72 hours, but means three calendar days. Therefore, petitioner urges the court to liberally construe the Table, and find that petitioner has demonstrated a Table injury. While it is at least arguable that "3 days" means three calendar days, and not 72 hours,[1] the Chief Special Master correctly interpreted the statutory language in light of relevant case law. *See Ultimo*, 1992 WL 392629, at *1 (citing *Jensen v. Secretary of HHS*, No. 90–1606V, 1992 WL 182187, at *3 (Cl.Ct. Spec.Mstr. July 10, 1992), *appeal pending; Tweten v. Secretary of HHS*, No. 90–549V, 1991 WL 117739 (Cl.Ct.Spec.Mstr. June 13, 1991), *aff'd*, 26 Cl.Ct. 405 (1991)); *see also Candelas v. Secretary of HHS*, No. 90–759V, 1991 WL 187316, at *3 (Cl.Ct. Spec.Mstr. Sept. 5, 1991).

Moreover, petitioner offers no support whatsoever for her contention that "Congress intended a legal definition of three days." The court cannot, and will not, develop an argument in support of petitioner's position. Accordingly, the court sustains the Chief Special Master's interpretation of three days as meaning 72 hours, and his conclusion that petitioner could not demonstrate a Table injury.

### B.

■ Petitioner claims that there was evidence that Dante suffered further afebrile seizures within one year of vaccination. Such testimony was presented by petitioner, and by petitioner's expert witness, Dr.

Peter Lichtenfeld. Under the Vaccine Act, a residual seizure disorder is presumed to be vaccine-related if the seizure occurs within three days after receipt of a DPT vaccination, and if two or more seizures unaccompanied by fever, or accompanied by fever of less than 102 degrees Fahrenheit occur within one year after the vaccination. 42 U.S.C. § 300aa–14(b)(2)(B). Here, the Chief Special Master concluded that, even had Dante's first seizure occurred within three days after the vaccination, petitioner's evidence was insufficient to establish a residual seizure disorder, because there was no evidence to support a finding that Dante's subsequent seizures were afebrile. *Ultimo*, 1992 WL 392629, at *1 n. 4.

■ In essence, petitioner argues that the Chief Special Master erred in rejecting the oral testimony of both petitioner and Dr. Lichtenfeld. "Determining the weight and credibility of the evidence is the special province of the trier of fact." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982); *see Hagmeyer v. Department of Treasury*, 757 F.2d 1281, 1284 (Fed.Cir. 1985); *Shepard v. Secretary of HHS*, 25 Cl.Ct. 326, 331 (1992). Accordingly, credibility determinations are "virtually unreviewable." *Hambsch v. Department of Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). The Chief Special Master was in the best position to make a determination as to the credibility, reliability, and proper weight to be accorded to the witnesses' testimony. *Hagmeyer*, 757 F.2d at 1284; *Matias v. United States*, 19 Cl.Ct. 635, 642 (1990).

■ Moreover, the Vaccine Act makes it clear that a special master is not bound by the opinions of expert witnesses. 42 U.S.C. § 300aa–13(b)(1).[2] Though a special mas-

---

1. The court notes, for comparison, that the Vaccine Injury Table describes other time limits in varying ways, such as "24 hours," "15 days," "30 days," "6 months." 42 U.S.C. § 300aa–14(a).

2. Title 42 U.S.C. § 300aa–13(b)(1) provides that the special master ... shall consider ... any diagnosis, conclusion, [or] medical judgment ... which is contained in the record regarding the nature, causation, and aggravation of

the petitioner's illness, disability, injury, [or] condition ...
Any such diagnosis, conclusion, judgment, [or] report ... shall not be binding on the special master.... In evaluating the weight to be afforded to any such diagnosis, conclusion, judgment, [or] report ... the special master ... shall consider the entire record....
*Id.* § 300aa–13(b)(1).

ter cannot "reject expert testimony without a reasonable basis," *Summar v. Secretary of HHS*, 24 Cl.Ct. 440, 444 (1991); *see Bunting*, 931 F.2d at 873, adequate grounds were present here for the rejection Dr. Lichtenfeld's testimony. Simply because a witness is found qualified to testify as an expert does not mean that the trier of fact must accept his testimony. *Bergman v. Secretary of HHS*, No. 90–1252V, 1992 WL 78671, at *7 (Cl.Ct.Spec.Mstr. March 31, 1992). Given that Dr. Lichtenfeld's testimony was contradictory and "unsupported" by medical records, *Ultimo*, 1992 WL 392629, at *1 n. 4, the Chief Special Master properly accorded it no weight.[3] The Chief Special Master also properly accorded petitioner's little weight as he found that her "memory of the events was understandably lacking." *Id.* Accordingly, the Chief Special Master properly found that petitioner failed to meet her burden of showing a Table injury.

### C.

Petitioner claims that the Chief Special Master further erred in failing to find that petitioner had demonstrated that Dante's injuries were caused by the vaccination, so as to deny petitioner compensation under 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(II). Petitioner claims that "[w]ithout saying so, the [Chief] Special Master … apparently is looking for a level of proof which approaches scientific certainty rather than reasonable medical probability." This claim is based on the Chief Special Master's questioning of Dr. Lichtenfeld, his preclusion of Dr. Mark Geier from giving testimony, and his reliance upon the Institute of Medicine's review of medical literature (IOM Report) which was not in the record.

▬▬▬▬ Again, petitioner is in essence arguing that the Chief Special Master erred in determining which evidence to accept as credible, and how much weight to give each piece of evidence. Petitioner's expert, Dr. Lichtenfeld, relied solely on a

temporal relationship and the absence of alternative causes for the injury in concluding that the vaccination in fact caused Dante's injury. *Id.* at *2–4. However, merely showing a temporal association with the vaccination or simply eliminating other possible causes of the injury does not satisfy petitioner's burden of proof. *See Grant v. Secretary of HHS*, 956 F.2d 1144, 1149 (Fed.Cir.1992). The Chief Special Master correctly concluded that petitioner had failed to meet her burden of proof—using the preponderance of the evidence standard—for demonstrating causation in fact.

▬▬▬▬ As for the testimony of Dr. Geier, the Chief Special Master was, again, in the best position to determine the credibility and competency of potential witnesses. *See* Section III.B., *supra.* The Chief Special Master need not have admitted into the record petitioner's proffered expert testimony, having determined in previous proceedings that Dr. Geier was not qualified to render the type of testimony he sought to give here. *See Jensen v. Secretary of HHS*, No. 1606V, 1992 WL 182187, at *6 n. 13 (Cl.Ct.Spec.Mstr. July 10, 1992), *appeal pending; see also Daly v. Secretary of HHS*, No. 90–590V, 1991 WL 154573, at *1 (Cl.Ct.Spec.Mstr. July 26, 1991).

Additionally, the Chief Special Master did not err in "relying" on material not submitted into evidence, *i.e.*, the IOM Report. In fact, the Chief Special Master did not rely on the IOM Report as petitioner claims. Instead, the Chief Special Master stated that respondent's expert's testimony "was consistent with" the IOM Report, *Ultimo*, 1992 WL 392629, at *3, and made one reference to the substance of the Report. This goes to the Chief Special Master's determination of Dr. Horwitz's credibility and to the proper weight to be accorded his testimony. It hardly constitutes reliance for the sake of reaching the conclusion that there was no causation in fact. It is incumbent upon the Chief Special Master to ap-

---

**3.** The Chief Special Master found the testimony of respondent's expert, Dr. Horwitz, to be more persuasive, as well as supported by medical records. *Ultimo v. Secretary of HHS*, 1992 WL 392629, at *1 n. 4. This decision is within the Chief Special Master's purview. *See* 42 U.S.C. § 300aa–13(b)(1).

ply his body of knowledge—including his knowledge of the IOM Report—to the resolution of Vaccine Act cases; it is important for a court to bring to the case general knowledge as well as the ability to analyze the instant facts. *See Wasson v. Secretary of HHS*, 24 Cl.Ct. 482, 486 (1991); *see also* RCFC App. J ¶ 8(b).[4] Thus, even had the Chief Special Master relied on the IOM Report in and of itself, it was not reversible error to do so.

To prove causation in fact, a petitioner must show by a preponderance of the evidence that the vaccination caused the injury. The court finds that the Chief Special Master applied this burden of proof to the facts before him, and did not apply a higher standard of proof as petitioner contends.

### D.

Petitioner contends that "[t]his special master has demonstrated a consistent pattern of bias in [Vaccine Act] cases, making them more adversarial that Congress had intended and requiring a higher level of proof than any jury could possibly require." Petitioner claims that if the facts in this case had been presented to a jury, petitioner would have been awarded compensation. Petitioner has offered no citations or evidence supporting her charge of bias. Similarly, petitioner cites no authority in support of her charge that the Chief Special Master has made Vaccine Act cases "more adversarial" than Congress intended. The Chief Special Master did not apply a higher burden of proof than is statutorily mandated, as discussed above. Moreover, Vaccine Act cases are not tried to a jury, so petitioner's speculative claim is irrelevant.

This sort of personal attack on the Chief Special Master is highly inappropriate, contentious, and unpersuasive. Petitioner claims that the National Vaccine Injury Compensation Program (Program), 42 U.S.C. §§ 300aa–10—300aa–19, has "become a bankrupt system, morally and monetarily." The Chief Special Master is a key

administrator of the Program. *See id.* § 300aa–12(c)(6). Petitioner in effect accuses the Chief Special Master of subverting the intent of Congress in establishing the Program. The court will not condone such frivolous, unsubstantiated accusations. Accordingly, the court finds that petitioner's final objection is completely without merit. Petitioner is forewarned that any repetition of such groundless accusations may cause the court to entertain sanctions against petitioner and petitioner's counsel pursuant to RCFC 11.

### CONCLUSION

Upon review of Chief Special Master Golkiewicz's decision, and applicable case law, the court finds that petitioner has failed to demonstrate that the Chief Special Master was arbitrary, capricious, or abused his discretion in deciding that she was not entitled to compensation. For that reason, petitioner's motion for review and request for remand is denied. The court, pursuant to 42 U.S.C. § 300aa–12(e)(2)(A), hereby sustains the Chief Special Master's December 11, 1992, decision. The Clerk of the court is directed to enter judgment accordingly.

IT IS SO ORDERED.

---

4. RCFC Appendix J ¶ 8(b) provides that [i]n receiving evidence, the special master will not be bound by common law or statutory rules of evidence. The special master will consider all relevant, reliable evidence, governed by principles of fundamental fairness to both parties.... RCFC App. J ¶ 8(b).