**Linda Sue WARE, as legal representative of Amy Lynne Ware, a minor child, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–1454V.**

United States Court of Federal Claims.

July 30, 1993.

Thomas G. Wilson, Charleston, WV, for petitioner.

Caroline G. Elmendorf, Washington, DC, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, Helen M. Goldberg, and John Lodge Euler, for respondent.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on petitioner's motion for review of Special Master Paul T. Baird's April 15, 1993 order dismissing petitioner's claim under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C.A. §§ 300aa–1 through 300aa–34 (West 1991 & Supp.1993). For the reasons set forth below, the court denies petitioner's motion for review and affirms the Special Master's order of dismissal.

### I. FACTS

Petitioner filed, *pro se*, a request for compensation under the Vaccine Act on September 26, 1990. As part of her claim, petitioner submitted her own affidavit, in which she stated that she could not remember exactly when her daughter, Amy Lynne Ware (Amy), began having adverse reactions in the form of seizures to a diphtheria-pertussis-tetanus (DPT) vaccination. Petitioner alleged that the seizures were compensable adverse reactions as defined under the Vaccine Act. 42 U.S.C.A. § 300aa–14(a)(I) (West 1991). Petitioner's record showed evidence that Amy's adverse reactions began sometime in late September 1976. Amy received her DPT vaccinations on July 6, August 20, and October 11, 1976, and her medical record indicates that the onset of seizures occurred in late September, approximately a month after the August 20, 1976 vaccination and three weeks prior to the one administered on October 11, 1976.

On December 14, 1990, Chief Special Master Gary J. Golkiewicz issued an order informing petitioner that her petition was missing certain documents required by the Act. *See id.* § 300aa–11(c) (West Supp. 1993). Most importantly, if petitioner intended to rely upon expert medical testimony, she needed to submit documentation setting forth an opinion, and a factual basis for that opinion. *See id.* On February 11 and 13, 1991, petitioner submitted two affidavits from medical experts. Both affidavits contained an opinion, but neither contained a factual basis for the opinion as required by the Act. *See id.* Respondent filed a report on February 10, 1992, which discounted both affidavits as being conclusory and not based on any scientific theory. Furthermore, after extensive review of the record, respondent argued it could find no basis for granting compensation under the Vaccine Act.

On April 17, 1992, Special Master Baird issued an order requiring petitioner to submit expert medical testimony expressing a medical opinion that one or all of the vaccinations caused Amy's seizures, and that a factual and scientific basis existed for that conclusion. The Special Master granted petitioner several extensions of time within which to comply with the April 17, 1992 order. Petitioner retained counsel on November 24, 1992 who, on December 4, 1992, submitted an expert medical report by Dr. David B. Sperry. Dr. Sperry's report stated that in order to rule out other possible causes of Amy's neurological problems, additional testing would be required. The Special Master determined that Dr. Sperry's report did not comply with his April 17, 1992 order. Because the report did not conform, the Special Master issued an order granting petitioner until January 26, 1993 to file a status report setting forth testing to be done and a specific request for extension of time in order to comply with the April 17, 1992 order. Additionally, the Special Master reminded petitioner

that the submitted testimony must address the issues presented in that order.

On January 21, 1993, petitioner informed the Special Master that the tests were complete and that if the Special Master wanted a copy of those tests, petitioner would need an extension until April 2, 1993. Special Master Baird granted the extension on February 9, 1993, again reminding petitioner that the expert testimony must comply with the April 17, 1992 order by addressing the medical record and providing a scientific basis for its conclusions.

On March 18, 1993, petitioner filed an amended report by Dr. Sperry. The report did not address the issues cited in the April 17, 1992 order. Instead, Dr. Sperry claimed that "based on a reasonable degree of medical certainty," Amy's "neurological problems" were caused by the August 20, 1976 vaccination, and that those problems occurred within three days of the administration. Yet, he made no reference to the medical record in support of these claims. The Special Master found that the Amy's record indicated that the first symptoms occurred weeks after the vaccination, and that Dr. Sperry never gave a scientific basis to show that the DPT vaccine could cause an adverse reaction weeks after it was administered. As a result, on April 15, 1993, the Special Master dismissed petitioner's claim because the proffered medical testimony was in clear contrast to the medical record, and did not comply with previous court orders.

## II. DISCUSSION

### A. *Standard of Review*

When reviewing a special master's decision, this court has authority only to "set aside any findings of fact or conclusions of law ... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C.A. § 300aa–12(e)(2)(B) (West 1991). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines*

*v. Secretary of HHS*, 940 F.2d 1518, 1528 (Fed.Cir.1991). Therefore, this court must give great deference to a special master's decision.

### B. *The Evidence Does Not Support a Claim Under the Vaccine Injury Table*

Petitioner has two possible ways to prove causation under the Vaccine Act. *Aea v. United States*, 26 Cl.Ct. 878 (1992). Under the first, petitioner must prove that the victim suffered an injury prescribed under the Vaccine Injury Table (Table) and that the onset of prescribed symptoms occurred within the time limits specified in the Table. 42 U.S.C.A. § 300aa–11(c)(1)(C)(i) (West Supp.1993). The Table "determines by law that the temporal association of certain injuries with the vaccination suffices to show causation ... [replacing] traditional tort standards of causation in fact with a causation in law based on temporal association." *Grant v. Secretary of HHS*, 956 F.2d 1144, 1147 (Fed.Cir.1992). Alternatively, when the onset of prescribed symptoms occur outside the time limits specified in the Table, petitioner can show that an off-Table injury occurred by proving that the vaccination was the causation-in-fact of the injury. 42 U.S.C.A. § 300aa–11(c)(1)(C)(ii)(II) (West Supp.1993). "To prove causation in fact, petitioners must show a medical theory causally connecting the vaccination and the injury." *Strother v. Secretary of HHS*, 21 Cl.Ct. 365, 369 (1990) (citing *Hasler v. United States*, 718 F.2d 202, 205–06 (6th Cir.1983)). Substantiating the claim by either method shifts the burden of proof to the respondent to prove an alternate cause. *McClendon v. Secretary of HHS*, 24 Cl.Ct. 329, 334 (1991).

Petitioner's first objection to the Special Master's decision of April 15, 1993 dismissing her petition is that she presented sufficient evidence to establish a *prima facie* case for compensation. Establishing a *prima facie* case for an on-Table claim requires that petitioner show by a preponderance of the evidence that an injury listed under the Act occurred within the time period set forth in the injury table, and

thus that causation is presumed. *Id.* at 333. For a DPT vaccination, the maximum time period for first onset of symptoms is three days. 42 U.S.C.A. § 300aa–14(a)(I) (West 1991). The Special Master determined that Amy's medical record and other evidence all point to the first onset occurring in late September 1976, weeks after Amy received the second vaccination. Therefore, there is no *prima facie* case for an on-Table claim in this instance.

■ Alternatively, to obtain compensation for an off-Table injury, petitioner must establish causation-in-fact in order to establish a *prima facie* case. *Ultimo v. Secretary of HHS*, 28 Fed.Cl. 148, 150 (1993). The Special Master found that the first opinion of Dr. Sperry was deficient in this regard. Specifically, Dr. Sperry stated that "the history suggests the temporal relationship between DPT immunization and onset of seizures and encephalopathy." However, temporal association is not sufficient to prove causation-in-fact. *Grant*, 956 F.2d at 1148. The Special Master informed petitioner of this discrepancy, which led to Dr. Sperry's submittal of his amended opinion.

In his amended opinion, Dr. Sperry stated that the vaccination of August 20, 1976 caused Amy's neurological problems and that those problems began within three days of its administration. However, Dr. Sperry failed to base his opinion on Amy's medical record, which showed that the first onset of symptoms occurred weeks after the August 20, 1976 vaccination. Additionally, Dr. Sperry gave no scientific theory for his opinion. This was in contradiction to repeated orders by the Special Master that the opinion address the significance of Amy's medical record and state a scientific basis for that opinion. "To prove causation in fact, petitioners must show a medical theory causally connecting the vaccination and the injury." *Id.* Dr. Sperry stated his "opinion" without discussing the contradictory evidence in Amy's medical record as to when her symptoms began. Thus, under either method, petitioner failed to establish a *prima facie* case for compensation under

the Act. The Special Master was correct in dismissing the claim.

C. *The Medical Opinion Was Not Supported by the Weight of the Evidence*

■ Petitioner next argues that she can resolve any "technical defects" in her petition if the Special Master allows her claim to proceed and holds an evidentiary hearing. However, these "technical defects," as petitioner calls them, are not in the petition, but were substantive defects in the medical opinion. The Special Master determined that Dr. Sperry's medical opinion was not supported by petitioner's affidavit and Amy's medical record. Accordingly, the Special Master did not proceed with a hearing. Furthermore, the Special Master was not required to hold an evidentiary hearing. *See Hale v. Secretary of HHS*, 22 Cl.Ct. 403, 409 (1991). Because petitioner did not present a *prima facie* case for compensation, the Special Master correctly determined that a hearing was unnecessary.

Petitioner also states that through conversations with Dr. Sperry, she is now aware of "signals" other than the seizures that indicated the onset of injury, and presumably would be able to testify about those signals. However, "contemporaneous written documents are entitled to greater weight as evidence than later conflicting oral testimony." *Cucuras v. Secretary of HHS*, 26 Cl.Ct. 537, 542 (1992), *aff'd*, 993 F.2d 1525 (Fed.Cir.1993). Any further testimony by petitioner as to "signals" would be in direct conflict to her affidavit in which she claims that she does not remember when Amy's adverse reactions began. Furthermore, Amy's complete medical records would not support such a claim. In sum, petitioner's proposed oral testimony would not only be entitled to little weight, but is irrelevant to the instant motion for review.

D. *There Was No Evidence of Bias Towards Pro Se Petitioners*

■ Finally, petitioner argues that because the Special Master based his decision to dismiss on "technical defects" in the

petition, he showed a bias toward *pro se* claimants. This argument is facially defective. The "technical defects" were not in the claim; Dr. Sperry's reports were substantively deficient. The Special Master not only granted numerous extensions of time for petitioner to file a medical opinion, but also issued explicit instructions as to what such opinion must contain. Furthermore, both of Dr. Sperry's medical opinions were filed by petitioner through counsel. Thus, by the time petitioner attempted to comply with the Special Master's requirements, she was no longer proceeding *pro se*. Even if petitioner did not understand what the court required, counsel should have.[1]

Petitioner alleges, in support of her claim of *pro se* bias, that "other cases with less supportive evidence have been permitted to proceed to final hearing." Yet, petitioner offered no further evidence of bias by the Special Master either in this case or in previous cases he may have dismissed. In sum, even if any bias existed—which the court finds difficult to believe based on Special Master Baird's case management— such bias was vitiated when petitioner retained counsel.

### III. Conclusion

For the reasons stated above, the court finds that petitioner has failed to demonstrate that the Special Master's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, the court denies petitioner's motion for review, and sustains the Special Master's April 15, 1993 order dismissing petitioner's claim. The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

---

**1.** It is presumed that counsel is qualified to practice law, and therefore could have advised petitioner as to what the court required, especially considering the Special Master's explicit order of April 17, 1992, to which the Special Master referred on numerous occasions.