Spencer L. HOVEY, and Hortence L. Hovey, as Guardians of the Person and Estate of, Carol L. Hovey, a Disabled Adult, Petitioners,

v.

SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 91–413 V.

United States Court of Federal Claims.

June 19, 1997.

---

7. Tr. at 15.

Melvin C. Wilson, Farmington, UT, for petitioners.

Mark W. Rogers, with whom were Assistant Attorney General Frank W. Hunger, Director John Lodge Euler, and Assistant Director Gerard W. Fischer, Washington, DC, for respondent.

## OPINION

MOODY R. TIDWELL, III, Judge.

This matter is before the court on petitioners' motion for review of the Special Master's decision to deny an evidentiary hearing and his decision to dismiss the petition brought under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa–1 to –34 (1994 & Supp. I 1995). For the reasons set forth below, the court holds that neither the special master's denial of an evidentiary hearing nor the decision to dismiss the petition was arbitrary, capricious, or an abuse of discretion, and both decisions are therefore affirmed.

## FACTS

Spencer and Hortence Hovey, as guardians, filed a vaccine-related injury claim for compensation on behalf of their disabled daughter, Carol Hovey, on January 30, 1991. Carol was born on April 5, 1960, and her physicians considered her to be a healthy, normal child. Carol's medical records indicate that she experienced normal growth and development throughout her first three

months. On August 4, 1960, Carol received her first diphtheria, pertussis, tetanus and polio (DPT/P) vaccination at the Tanner Clinic in Layton, Utah. On September 8, 1960, Carol was supposed to receive her second DPT/P immunization from Dr. Kelly at the Tanner Clinic. The records from the second visit indicate that the second immunization was delayed for one week because Carol had an upper respiratory infection and red ears.

Petitioners claim that the second vaccination caused Carol to suffer encephalopathy. The term encephalopathy refers to "any significant acquired abnormality of, or injury to, or impairment of function of the brain." 42 U.S.C. § 300aa–14(b)(3)(A). The signs and symptoms of encephalopathy include "changes lasting at least 6 hours in level of consciousness, .... high pitched and unusual screaming, persistent unconsolable crying, and bulging fontanel." [1] *Id.*

The record presents conflicting accounts as to when the second DPT/P vaccination was administered. The contemporaneous medical records conflict with the affidavit testimony of Carol's parents, family friends, and letters written by two doctors on December 12, 1990, in an attempt to recollect the events of September 21, 1960.

The statement prepared by petitioners indicates that the second immunization was given to Carol on September 21, 1960, just before the onset of her seizures. Petitioners allege that Carol suffered a high fever, convulsions, and seizures within several hours after she received the vaccination. Carol was admitted to the hospital where she continued to have seizures. She remained in the hospital for six weeks and was discharged with a diagnosis of post-measles encephalitis. Following the hospitalization, Carol made a gradual but incomplete recovery. The effects continue to affect Carol to this day. She has poor speech, poor coordination and strength, and mental retardation.

The *medical records* indicate that Carol was given the vaccine one week before the seizure. The medical record of September 8,

1960 recommended that Carol "wait 1 wk" for her second DPT/P vaccination. The hospital case history of September 21, 1960, prepared on the date of her first seizure, stated that the second immunization was given "1 week ago." Petitioners have not produced a vaccination record or any other documentation to confirm that Carol received a DPT/P vaccination on September 21, 1960.

Based on this evidence, the special master determined that Carol had not suffered an injury within the time limits of the vaccine table. *Hovey v. Secretary of HHS*, No. 91–413V (Fed.Cl.Sp.Mstr. Sept. 24, 1996) (order). On December 19, 1996, the special master issued a written decision that incorporated his September 24, 1996 order deny-. ing an award of compensation. *Hovey v. Secretary of HHS*, No. 91–413V (Fed.Cl.Sp. Mstr. Dec. 19, 1996) (dismissal order). The special master held that the Hoveys failed to establish that it is more likely than not that Carol received a DPT/P vaccination on September 21, 1960. *Id.* The special master found that Carol received her DPT/P vaccination one week prior to the September 21, 1960 hospitalization. *Id.* The special master denied petitioners' motion for an evidentiary hearing. *Id.* The special master also dismissed the petition. *Id.*

In the motion for review, petitioners' objections involve two issues: (1) whether the special master abused his discretion when denying their motion for an evidentiary hearing, and (2) whether the special master acted in an arbitrary and capricious manner when deciding to dismiss the petition.

## DISCUSSION

### I. Standard of Review

When deciding a motion to review a special master's decision, the judges of this court shall:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

---

1. Fontanel is a membrane-covered opening between bones; specifically, one of the intervals closed by membranous structures between the uncompleted angles of the parietal bones and the neighboring bones of a fetal or young skull. Webster's Third New International Dictionary 884 (3d ed.1976).

(B) set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2).

■ In 1989, Congress amended the Vaccine Act to provide that this court shall not set aside a special master's findings of fact or conclusions of law unless it determines them to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." National Childhood Vaccine Injury Act, Pub.L. No. 101–239, § 6601(h)(2)(B), 103 Stat. 2289–90 (codified at 42 U.S.C. § 300aa–12(e)(2)(B) (1994)). As a result, the issue now before the court is only whether the findings and conclusions of the special master are in accordance with the given standard of review. This standard of review applies to all cases filed after the effective date of the amendment. § 6601(s)(1)(A), (C), 103 Stat. at 2293. The United States Court of Appeals for the Federal Circuit has explained that "[t]hese standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment." *Munn v. Secretary of HHS*, 970 F.2d 863, 870 (Fed.Cir.1992), *cited in Dickerson v. Secretary of HHS*, 35 Fed.Cl. 593, 597 (1996). Fact findings and discretionary rulings are reviewed under the arbitrary and capricious standard while legal questions are reviewed under the "not in accordance with law" standard. *Id.* Thus, both issues presented in this case are reviewed under the "arbitrary and capricious" standard. *Hines v. Secretary of HHS*, 940 F.2d 1518, 1527 (Fed.Cir.1991); *Murphy v. Secretary of HHS*, 23 Cl.Ct. 726, 729 (1991), *aff'd*, 968 F.2d 1226 (Fed.Cir.), *cert. denied*, 506 U.S. 974, 113 S.Ct. 463, 121 L.Ed.2d 371 (1992); *Carlson v. Secretary of HHS*, 23 Cl.Ct. 788, 790 (1991), *aff'd*, 968 F.2d 1227 (Fed.Cir.1992).

■ In applying the "arbitrary and capricious" standard, this court is not to substitute its own judgment for that of the special master. *Centmehaiey v. Secretary of HHS*, 32 Fed.Cl. 612, 620 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)), *aff'd*, 73 F.3d 381 (Fed.Cir.1995); *Carlson*, 23 Cl.Ct. at 790. A court must examine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Dickerson*, 35 Fed.Cl. at 597 (citing *Volpe*, 401 U.S. at 416, 91 S.Ct. at 823–24); *Carlson*, 23 Cl.Ct. at 790. Error is difficult to demonstrate if the special master has considered the relevant evidence in the record, drawn plausible inferences and articulated a rational basis for the decision. *Hines*, 940 F.2d at 1528; *see Dickerson*, 35 Fed.Cl. at 597; *Ware v. Secretary of HHS*, 28 Fed.Cl. 716, 718 (1993).

## II. Denial of an Evidentiary Hearing

Petitioners argue that the special master abused his discretion by denying an evidentiary hearing. Under the authority granted by 28 U.S.C. § 2071 (1994), and 42 U.S.C. § 300aa–12(d)(2), the Court of Federal Claims has promulgated rules of procedure for use by special masters.[2] These rules are governed by principles of fundamental fairness to both parties. *Dickerson*, 35 Fed.Cl. at 598. Overall, the Vaccine Rules accord the special master extensive discretion in conducting proceedings. The statute obligates a special master to "afford all interested persons an opportunity to submit relevant *written* information." 42 U.S.C. § 300aa–12(d)(3)(B)(iv) (emphasis added). In receiving evidence, the special master is not bound by common law or statutory rules of evidence. However, the special master is required to consider all relevant, reliable evidence. Vaccine Rule 8(b).

■ Nevertheless, the Vaccine Act does not oblige a special master to hold an evidentiary hearing. *Burns v. Secretary of HHS*, 3 F.3d 415, 417 (Fed.Cir.1993). The Vaccine Rules clearly establish that the special master may decide a case on the basis of written

---

**2.** The Vaccine Rules of the Office of Special Masters are found in Appendix J of the Rules of the Court of Federal Claims (hereinafter "Vaccine Rules").

filings without an evidentiary hearing. Vaccine Rule 8(d); *see Dickerson*, 35 Fed.Cl. at 598; *Plummer v. Secretary of HHS*, 24 Cl. Ct. 304 (1991). As such, the decision to convene a hearing is a discretionary one. However, this discretion is tempered by Vaccine Rule 3(b) which requires that each party have a full and fair opportunity to present its case. Additionally, the rule requires that a record be created that is sufficient to allow review of the special master's decision. *See Dickerson*, 35 Fed.Cl. at 598; *Murphy*, 23 Cl.Ct. at 730.

■ There is no evidence in the record that leads the court to believe that petitioners did not have a full and fair opportunity to present their case. Thus, not only did the special master have the power to deny an evidentiary hearing, but the record reveals that he did not act in an arbitrary and capricious manner in doing so. The record shows that the special master granted two extensions of time and twice permitted petitioners to file late. *Hovey v. Secretary of HHS*, No. 91–413V (Fed.Cl.Sp.Mstr. Oct. 26, 1994) (notice to extend time); *Hovey v. Secretary of HHS*, No. 91–413V (Fed. Cl. Sp. Mstr. June 2, 1995) (notice to extend time); *Hovey v. Secretary of HHS*, No. 91–413V (Fed.Cl.Sp. Mstr. Sept. 7, 1995) (notice for leave to file response); *Hovey v. Secretary of HHS*, No. 91–413V (Fed.Cl.Sp.Mstr. Mar. 13, 1996) (notice to allow late filing). Additionally, on February 6, 1996, after expressing an inclination to find against petitioners on the table injury claim, the special master encouraged them to pursue a claim under an actual causation theory. While petitioners were pursuing the actual causation claim, the special master continued to accept affidavits in support of the table injury claim. Although petitioners ultimately chose not to pursue the actual causation claim, the special master allowed petitioners a full and fair opportunity to present their case by permitting extensions and late filings related to both the table injury claim and the actual causation claim.

In addition, this court finds that the record as it stands is sufficient to enable the special master to reach a fair, reasoned, and informed decision. Petitioners did not produce a vaccination record or any other documentation that confirms Carol received a DPT/P vaccination on September 21, 1960. Further, petitioners did not make representations that testimony at an evidentiary hearing would be anything other than evidence already contained in the affidavits, medical records and doctors' letters which were previously submitted. After reviewing the record, the special master could reasonably conclude that there is nothing a witness could testify to at an evidentiary hearing that would affect the outcome of the case. Thus, the special master acted within his discretion in denying the evidentiary hearing.

### III. Dismissal of the Table Injury Claim

Petitioners also claim that the special master's dismissal of the table injury claim was capricious. *See Hines*, 940 F.2d at 1527 (setting forth the arbitrary and capricious standard as appropriate for the issue of dismissal); *Murphy*, 23 Cl.Ct. at 729; *Carlson*, 23 Cl.Ct. at 790.

According to the Vaccine Act, a petitioner is entitled to compensation only if it can be shown, by a preponderance of evidence, that the case presented meets the criteria specified in the Vaccine Act. 42 U.S.C. § 300aa–13(a)(1)(A). First, a petitioner may recover when an injury or condition listed in the Vaccine Injury Table, 42 U.S.C. § 300aa–14, begins to manifest itself within the time specified for the vaccine in question. *Id.* § 300aa–11(c)(1)(C)(i). Second, for injuries not listed in the table or which do not occur within the time period stipulated in the table, the Vaccine Act authorizes recovery only if the petitioner proves actual causation. 42 U.S.C. § 300–11(c)(1)(C)(ii).[3] The Vaccine Act requires the special master to determine that there is not a preponderance of the evidence showing that the injury was "due to

---

**3.** This opinion does not address compensation under an actual causation theory because petitioners only pursued a table injury claim before the special master. *Hovey v. Secretary of HHS*, No 91–413V, Dismissal Order at 2 (Fed.Cl.Sp.

Mstr. Dec. 19, 1996); *see* Letter from John H. Menkes, M.D., dated October 25, 1996, attached to Pet'r's Mot. for Evidentiary Hr'g, filed October 29, 1996.

factors unrelated to the administration of the vaccine." *Id.* § 300aa–13(a)(1)(B).

■ Petitioners filed for compensation claiming that Carol suffered from encephalopathy and seizures, a table injury. The Vaccine Injury Table sets forth "the time period in which the first symptom or manifestation of onset or of the significant aggravation of such injuries, disabilities, illnesses, conditions, and deaths is to occur after vaccine administration for purposes of receiving compensation under the Program." 42 U.S.C. § 300aa–14(a). For petitioners to be compensated, they must prove that the "first symptom or manifestation of onset or of the significant aggravation after vaccine administration" occurred within three days of the vaccination. *Id.*

This case hinges on a factual determination wherein petitioners' claims contradict an immunization date that is alluded to in medical records. Petitioners allege that Carol received her second DPT/P vaccination on September 21, 1960, and within several hours suffered a high fever, convulsions and seizures. Carol's medical records do not support this allegation. Rather, the medical records support the special master's conclusion that Carol received the vaccination one week prior to September 21, 1960. At the September 8, 1960 physical examination, Carol's physician recommended: "Wait 1 wk for DPTP." The case history from Carol's September 21, 1960 hospitalization—two weeks after Carol's September 8, 1960 physical examination—states: "Has had the first two in the DPT series and polio shots along with these. Last shot was given 1 week ago." These records led the special master to conclude that the vaccination was administered the week of September 15, 1960. This finding was not arbitrary or capricious because petitioners could not prove that the first manifestation of symptoms occurred within the three day period as required by the Vaccine Act.

■ Petitioners argue that the special master should not have based his conclusion on the two medical reports. Instead, petitioners argue the special master should have relied on the affidavits expressing their independent recollection of events as well as other affidavits and letters in support of their position that the vaccination was administered on September 21, 1960. However, contemporaneous written records are generally given more weight than testimony adduced years later. Oral testimony that is in conflict with contemporaneous documents is entitled to little evidentiary weight. *See e.g., United States v. United States Gypsum Co.,* 333 U.S. 364, 396, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Cucuras v. Secretary of HHS,* 26 Cl.Ct. 537, 542 (1992), *aff'd,* 993 F.2d 1525 (Fed.Cir.1993); *Ware,* 28 Fed.Cl. at 719. In addition, the Vaccine Act clearly states that the special master may not find for a petitioner based on the claims of the petitioner alone, unsubstantiated by medical records or medical opinion. 42 U.S.C. § 300aa–13(a)(1).

Finally, petitioners argue that the two medical records are unreliable. The court disagrees. Numerous cases have found that medical records, in general, warrant consideration as trustworthy evidence. *Cucuras,* 993 F.2d at 1525; *Burns,* 3 F.3d at 415; *Ware,* 28 Fed.Cl. at 716. Medical records contain information supplied to or by health professionals to facilitate diagnosis of medical conditions. The theory is that with proper treatment hanging in the balance, accuracy has an extra premium. *Cucuras,* 993 F.2d at 1528; *Burns,* 3 F.3d at 417; *Ware,* 28 Fed. Cl. at 719. Accordingly, the special master did not err by relying on medical records over the affidavit testimony of petitioners.

As described above, the special master considered the relevant factual evidence and concluded that petitioners had failed to submit evidence to sustain a claim. In light of the evidence, the special master's decision to dismiss the petition was not arbitrary or capricious.

## CONCLUSION

The special master thoroughly weighed the evidence and reached a factually supportable conclusion. The court finds that the special master's decisions to deny an evidentiary hearing and to dismiss the claim were neither arbitrary and capricious, nor an abuse of discretion. For the above-stated reasons, this court affirms the decisions of the special

master. The Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**