**Cheryl A. CARLSON, as the Legal Representative of her minor son Spencer Carlson, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–839V.

United States Claims Court.

Aug. 19, 1991.

Curtis R. Webb, Twin Falls, Idaho, for petitioner.

Eleanor A. Barry, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.

## ORDER

MOODY R. TIDWELL, III, Judge.

Under the National Childhood Vaccine Injury Act of 1986, Pub.L. No. 99–660, 100 Stat. 3756 (codified as amended 42 U.S.C. §§ 300aa–1 to 300aa–33) (West Supp.1990) (hereinafter "Act"), this matter comes before the court on petitioner's motion for review of Special Master Denis J. Hauptly's April 5, 1991 Order of Dismissal. Special Master Hauptly dismissed petitioner's claim for failure to comply with the requirements of the Act. For the reasons set forth below, this court affirms.

## FACTS

On March 5, 1986, petitioner's son, Spencer, received a DPT vaccination which allegedly resulted in injury. Petitioner subsequently filed a civil action against the manufacturer of the vaccine in the Federal District Court for the District of Arizona. However, with an eye towards seeking recovery under the Act, petitioner requested that the district court place the action on its inactive calendar, which it did on August 1, 1989. On August 29, 1990, petitioner filed a claim under the Act.

The original version of the Act contained the following provisions:

(A) A plaintiff who on October 1, 1988, has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after October, 1, 1988, or before judgment, whichever occurs first, *elect to withdraw such action without prejudice* and file a peti-

tion under subsection (b) of this section for such injury or death.

(B) If a plaintiff who on October 1, 1988, had pending a civil action for damages for a vaccine-related injury or death does not withdraw the action under subparagraph (A), such person may not file a petition under subsection (b) of this section for such injury or death.

42 U.S.C. § 300aa–11(a)(5) (1988) (emphasis added). On December 19, 1989, Congress amended subparagraphs A and B. The amended versions are as follows:

(A) A plaintiff who on the effective date of this subpart has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after the effective date of this subpart or before judgment, whichever occurs first, *petition to have such action dismissed without prejudice* or costs and file a petition under subsection (b) of this section for such injury or death.

(B) If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death.

42 U.S.C.A. § 300aa–11(a)(5) (West 1991).

Pursuant to the amendment, respondent filed a report on December 20, 1990, raising the issue of petitioner's failure to comply with the Act; petitioner had not dismissed her civil action, but merely had placed it on the district court's inactive calendar. Petitioner responded by dismissing her civil action without prejudice on January 24, 1991. On January 30, 1991, respondent filed a motion to dismiss, asserting that petitioner's post-petition dismissal could not cure the defect in her claim. The Special Master granted respondent's motion on April 5, 1991.

The statute of limitations expired for petitioner's claim under the Act on January 31, 1991. *See* 42 U.S.C. § 300aa–16(a)(2). Consequently, the Special Master's order prevents petitioner from recovering damages under the Act, as she may not re-file her action in the Claims Court. However, petitioner still may pursue civil damages in district court subject, of course, to any deficiencies properly raised there.

On May 6, 1991, petitioner filed a Motion for Review in this court. Petitioner advanced two reasons why this court should reverse the Special Master's order. First, petitioner contended that she satisfied the Act by moving her civil action to the district court's inactive calendar. Second, petitioner contended that, although she dismissed her civil action after filing a petition under the Act, her dismissal nonetheless satisfied the Act's requirements.

### DISCUSSION

■ At the outset, the court observes that the relevant facts are not in dispute, and the court was asked to review only issues of law. Although the Act specifically states the standard of review this court must use in reviewing issues of law, both parties misstated that standard. Respondent asserted that the court should review petitioner's motion *de novo*. Petitioner advanced an internally contradictory standard, stating: "[t]his Motion for Review raises issues of law which are subject to *de novo* review by this Court applying the clearly erroneous standard." Both parties, inexplicably, failed to grasp the plain words of the statute which grants this court the authority to "set aside any finding of fact *or conclusion of law* of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 42 U.S.C. § 300aa–12(e)(2)(B) (emphasis added); *see also Loe v. Secretary of the Dep't of Health & Human Servs.*, 22 Cl.Ct. 430, 432 (1991). The review is not *de novo*. This court must review Special Master Hauptly's decision using the arbitrary and capricious standard. The scope of review for that standard is exceedingly narrow; a court using it "may not substitute its own judgement for that of the special master if the special master has considered all relevant factors, and has made no clear error of judgment." *Loe,* 22 Cl.Ct. at 432; *see also Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Hyundai Elec. Indus. v. United States Int'l Trade*

*Comm'n,* 899 F.2d 1204, 1209 (Fed.Cir. 1990).

### I. The Special Master Did Not Err in Ruling that A Pre-petition Stay Does Not Satisfy the Dismissal Requirement of the Act.

The gravamen of petitioner's argument is that the Special Master erred by making an arbitrary distinction between the dismissal requirement of the Act, and petitioner's stay of her action. Petitioner argued that the Special Master made this distinction without considering sufficiently: (1) the purpose and history of the Act, (2) the purpose of the dismissal requirement, and (3) petitioner's intent to comply with the Act. Respondent argued that the plain language of the statute mandates dismissal of the civil action, not a stay. The resolution of this dispute involves application of rules of statutory construction.

 It is a fundamental cannon of statutory construction that the starting point for interpreting a statute is the language itself. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 107, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980). If the statutory language is clear, it ordinarily is conclusive, *United States v. Clark,* 454 U.S. 555, 560, 102 S.Ct. 805, 809, 70 L.Ed.2d 768 (1982), and the court must assume that the ordinary meaning of the words express the legislative purpose. *Patterson,* 456 U.S. at 68, 102 S.Ct. at 1537. Only when the text itself does not exclude alternate interpretations may the court look to the legislative history for illumination on the Congress' intent. *See Patterson,* 456 U.S. at 68, 102 S.Ct. at 1537; *Ex parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949); *Deluxe Corp. v. United States,* 885 F.2d 848, 850 (Fed.Cir.1989). However, "[g]oing behind the plain language of a statute in search of a possibly contrary congressional intent is a step to be taken cautiously, even under the best circumstances." *Patterson,* 456 U.S. at 75, 102

S.Ct. at 1540 (quoting *Piper v. Chris–Craft Industries, Inc.,* 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977)).

 One of the central purposes of the Act was to provide vaccine-injured persons a relatively fast and inexpensive remedy. *See generally* H.R.Rep. No. 908, 99th Cong., 2d Sess. 3–7, *reprinted in* 1986 U.S.Code Cong. and Admin.News 6344–48. Petitioner argued that, in order to achieve this purpose, the court must interpret the Act liberally so as not to bar the claims of individuals for whom Congress intended to provide a remedy. However, petitioner's argument assumes that Congress intended that anyone, whether or not in compliance with the Act's specific jurisdictional requirements, should have access to the Program. Neither the plain language of the Act, nor common sense, supports this conclusion. Petitioner cannot hide behind the broad purpose of the Act to defeat specific, enumerated requirements. *See Patterson,* 456 U.S. at 68, 102 S.Ct. at 1537; *Clark,* 454 U.S. at 560, 102 S.Ct. at 809.

In his Order of Dismissal, the Special Master ruled that "[i]t was not Congress' intent that petitioners keep their civil actions alive in the traditional tort system while pursuing a petition in this forum." *Carlson v. Secretary of the Dept. of Health and Human Servs.,* No. 90–839V, slip op. at 5, 1991 WL 62123 (Cl.Ct. filed April 5, 1991). The Special Master based this ruling on his reading of subparagraph (B) which states that a person who has a "pending" civil action may not file a petition under the act. *See* 42 U.S.C. § 300aa–11(a)(5)(B). The Special Master ruled that the word "pending" means awaiting action, and any action that has not been dismissed, *e.g.* stayed, is awaiting action. *Carlson,* No. 90–839V, slip op. at 5. This interpretation is not arbitrary and capricious, nor does it constitute an abuse of discretion. Rather, it is supported by a plain reading of subparagraph (A) which requires that all applicants, prior to filing a claim under the act, petition to have their civil actions "dismissed without prejudice." *See* 42 U.S.C. § 300aa–11(a)(5)(A). As petitioner noted, the term "dismiss without prejudice" is a

legal term of art with a specific meaning. However, contrary to petitioner's argument, that specific meaning does not include staying an action.

The Special Master's interpretation of subparagraph B is analogous to the Federal Circuit's interpretation of a similar statute defining Claims Court jurisdiction, which states:

[t]he United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has *pending* in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (1982) (emphasis added). The Federal Circuit held that actions that have been "stayed" are "pending," and therefore fail to meet § 1500's jurisdictional requirement. *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1567 (Fed. Cir.1988). The court cannot find that the Special Master's interpretation of the word "pending" is arbitrary or capricious, as it is entirely consistent with the Federal Circuit's interpretation of "pending." In fact, in light of Federal Circuit precedent, this court would have to find any other interpretation "not in accordance with the law."

▉ Petitioner may not construct a statute contrary to its plain meaning without showing clear legislative history supporting the asserted construction. *See Patterson*, 456 U.S. at 68, 102 S.Ct. at 1537; *Massing v. Department of Health & Human Servs.*, 926 F.2d 1133, 1135 (Fed.Cir. 1991); *Johns–Manville*, 855 F.2d at 1559. Here, petitioner failed to make such a showing. The Special Master's construction of the statute is entirely consistent with petitioner's proposed Congressional intent—providing a relatively simple and inexpensive means through which persons can access the Act. Dismissing a pending civil action before filing in the Claims Court is neither complicated, nor expensive.

An examination of the legislative history supports the Special Master's interpretation. A House Conference Report issued prior to the 1989 amendment states:

Subparagraph (A) clarifies that a petitioner must petition to have his or her action dismissed and may not simply allow the action to lie dormant during the compensation proceeding. Subparagraph (B) clarifies that a plaintiff in such an action whose action is still pending may not enter the compensation system.

H.R.Rep. No. 247, 101st Cong., 1st. Sess. 522, *reprinted in* 1989 U.S.Code Cong. & Admin.News 2237. This report unequivocally shows that Congress did not intend to allow petitioners to stay their actions while seeking recovery under the Act.

Petitioner also contended that Congress did not legislate a definitive set of rules, but rather enacted a "working experiment" which it has amended since the statute's inception. Although somewhat unclear, petitioner's argument apparently was that Congress, by periodically amending the Act, meant to create a flexible, not fixed, set of rules which a court should interpret in a manner that best achieves the Act's purpose. Again, petitioner's argument runs contrary to the plain words of the statute. The mere fact that Congress has amended provisions of the Act does not negate the specific language that Congress painstakingly crafted. *See Patterson*, 456 U.S. at 68, 102 S.Ct. at 1537; *Ex parte Collett*, 337 U.S. at 61, 69 S.Ct. at 947. Rather, it supports strict adherence to the language as written. Where Congress has determined that the Act needed adjustment, it has made the changes. The court is not free to substitute its judgment by judicially legislating changes that petitioner believes Congress "meant." Again, petitioner attempts to hide behind the broad purpose of the Act to defeat specific enumerated requirements. This, petitioner may not do. *See Patterson*, 456 U.S. at 71, 102 S.Ct. at 1358; *Clark*, 454 U.S. at 560, 102 S.Ct. at 809.

Citing a House Conference Report, petitioner argued that Congress fashioned the withdrawal requirement to serve the com-

plimentary purposes of attracting litigants to the Program, and stabilizing the vaccine market. *See generally* H.R.Rep. No. 908, 99th Cong., 2d Sess. 3–7, *reprinted in* 1986 U.S.Code Cong. and Admin.News at 6344–48. Petitioner contended that Congress could not achieve these goals by requiring applicants to make a binding election between civil litigation, and the unchartered waters of the Act. Although somewhat unclear, petitioner apparently believes that the Special Master's interpretation of the Act somehow forced her to make a binding election between the Act and civil litigation. Petitioner is mistaken. The Special Master's construction of the statute merely clarifies the procedures—which petitioner did not follow—that Congress requires a person to follow in order to make a non-binding election. Petitioner did not make a binding election, as she still may re-file a civil action for damages against the vaccine manufacturer in a district court.

Finally, petitioner insisted that she intended to comply with the Act, and, under the circumstances, such intent constituted compliance. There is no support in the law for this position. Were the court to rule that intent to comply is the same as actual compliance, it would eviscerate the procedural requirements stipulated by Congress.

II. The Special Master Did not Err in Ruling that Petitioner Could Not Cure the Defects in Her Claim.

█ Petitioner argued that her failure to dismiss her civil action before filing under section 11(a) of the Act was a defect concerning her capacity to sue, not the court's jurisdiction. Petitioner contended that the dismissal requirement of section 11(a) is not jurisdictional, because section 12(a), not 11(a), defines this court's jurisdiction. Petitioner also asserted—again—that the court must interpret the Act liberally in order to advance its purpose.

In his Order of Dismissal, the Special Master ruled that "the distinction petitioner attempt[ed] to make by labelling §§ 11(a)(5)(A) and (B) [of the Act] as eligibility requirements as opposed to jurisdictional requirements is largely one of se-

mantics." *Carlson*, No. 90–839V, Slip Op. at 3. While recognizing that the Act was developed to be flexible and expeditious in its adjudication of vaccine cases, the Special Master held that the procedural prerequisites established in section 11(a) are jurisdictional in nature and, as such, cannot be cured. *Id.* at 4.

Because the issues presented by petitioner require the court to construe the Act, the court begins by analyzing the language of the statute itself. *See GTE Sylvania,* 447 U.S. at 107, 100 S.Ct. at 2055. Section 11(a)(5)(B) of the Act states: "[i]f a plaintiff has *pending* a civil action for damages for a vaccine-related injury or death, such person *may not file* a petition under subsection (b) of this section for such injury or death." (emphasis added). Although this language is clear in its intent to preclude persons from filing a petition if they have pending a civil action, it does not address explicitly the jurisdictional issue.

Although not specifically delineated as such, the Special Master ruled that section 11(a) is jurisdictional as it is incorporated in section 12(a), which defines the court's jurisdiction. Section 12(a) states:

The United States Claims Court and the United States Claims Court special masters shall, in accordance with this section, have jurisdiction over proceedings to determine if a petitioner under section 300aa–11 of this title is entitled to compensation under the Program and the amount of such compensation. The United States Claims Court may issue and enforce such orders as the court deems necessary to assure the prompt payment of any compensation awarded.

42 U.S.C. § 300aa–12(a). As the Special Master stated, "[a] close reading of § 12(a) indicates jurisdiction only exists over a petitioner who is a proper petitioner under § 11(a). A party with a pending civil action is not a proper petitioner under § 11(a) and therefore section 12(a) does not provide jurisdiction." *Carlson,* No. 90–839V, slip op. at 4 n. 2.

While the court finds the Special Master's interpretation of sections 11(a) and 12(a) is reasonable, it also finds, as petition-

er argued, that other interpretations are possible. In cases where more than one interpretation of a statute is possible, the court should look to the legislative history to determine Congressional intent. *See Clark,* 454 U.S. at 560, 102 S.Ct. at 809; *Deluxe,* 885 F.2d at 850. In this vein, petitioner argued that the court should interpret the Act liberally to advance its purpose of stabilizing the vaccine market, and providing a quick and inexpensive remedy for vaccine-related injuries. *See generally* H.R.Rep. No. 908, 99th Cong., 2d Sess. 3–7, *reprinted in* 1986 U.S.Code Cong. and Admin.News 6344–48. Petitioner asserted that, by denying her access to the Program, the court will force her back into civil litigation, thereby contravening Congressional intent.

Petitioner's argument, although not entirely without merit, is weakened by two factors. First, the broad purpose advanced by petitioner is not necessarily inconsistent with the Special Master's interpretation of the Act. Although a strict, jurisdictional construction of sections 11(a) and 12(a) might deny a remedy to a small number of petitioner's who have failed to follow the Act's clear directives, the majority still will have access to the Program. Second, the court may not construe liberally sections 11(a) and 12(a) because, read together, they waive sovereign immunity for suits against the United States. A fundamental tenet of interpreting waivers of sovereign immunity is that the court must construe them strictly or narrowly. *See Getty Oil Co. v. United States,* 767 F.2d 886, 889 (Fed.Cir.1985); *Morgan v. United States,* 12 Cl.Ct. 247, 253 (1987). A narrow or strict construction of sections 11(a) and 12(a) forecloses petitioner's argument that she may cure the defect in her claim.

Petitioner's reliance on case law to demonstrate that the procedural requirements of section 11(a) concern her capacity to sue, not the court's jurisdiction, also is not compelling. Petitioner relied on a footnote to a Claims Court decision which stated:

The Special Master noted, however, that the respondent incorrectly framed his objection as a challenge to the Claims Court's jurisdiction. Instead the Special Master characterized respondent's motion as a challenge to petitioner's capacity to sue within the provisions of the Act in issue, inasmuch as she failed to satisfy the Act's filing requirements. The court agrees with the Special Master's characterization of respondent's motion.

*Wiggins v. Secretary of the Dep't of Health & Human Servs.,* 17 Cl.Ct. 551, 553 n. 1 (1989) (citations omitted), *aff'd,* 898 F.2d 1572 (Fed.Cir.1990). *Wiggins* held that settlement of a claim for vaccine-related injuries against the administering physician bars recovery under the act. *See generally Wiggins,* 17 Cl.Ct. at 551–58. The footnote, which was not integral to the holding, merely is dicta. As such, it carries little weight with this court.

Petitioner also relied on another footnote in an earlier Special Master's decision, which stated, in pertinent part:

[P]ursuant to § 300aa–11(a)(5)(A), if the petitioner has filed a suit in another court against a vaccine manufacturer or administrator arising out of the same injury, that suit must be withdrawn before the petitioner can qualify for an award under the Program. While the parties' stipulation did not address this requirement of the statute, the petitioner has since (on September 25, 1989), at my suggestion, remedied the situation by filing documents showing that her action in a Louisiana court has been dismissed without prejudice.

*Garlington v. Secretary of the Dept. of Health and Human Servs.,* No. 88–31V, Slip Op. at 4 n. 4, 1989 WL 250129 (Cl.Ct. filed September 25, 1989). This footnote provides no support for plaintiff's position because it does not indicate when the civil action (in *Garlington*) was dismissed, and instead addresses only the issue of the petitioner's failure to stipulate that such a dismissal had taken place. In addition, the Special Master accurately observed that dismissal in *Garlington* would not have changed the substantive outcome of the case as the *Garlington* decision was written before the statute of limitations had run, and would have resulted only in the petitioner re-filing it at a cost of $120.

Here, the Special Master's decision changed the substantive outcome of the case because it was written after the statute of limitations expired.

Having decided that the section 11(a) requirement is jurisdictional, the Special Master was well within the law by determining that petitioner could not cure the defect in her claim. Pertinent on this point is the Federal Circuit's interpretation of 28 U.S.C. § 1500. Like the statute at issue here, § 1500 bars this court's jurisdiction over any action for which a similar claim is pending in another court. In a recent decision, the Federal Circuit reversed a Claims Court decision which held that jurisdiction is lacking if, at the time of the filing of a suit in the Claims Court, there is a pending case on the same claim in another court. *U.N.R. Indus., Inc. v. United States*, 911 F.2d 654, 667 (Fed.Cir.1990), *vacated*, 926 F.2d 1109 (Fed.Cir.1990), *reh'g granted*, 926 F.2d 1109 (Fed.Cir.1991). In *U.N.R. Industries*, the Federal Circuit reasoned that, if the earlier-filed suit is dismissed before the Claims Court entertains and acts on the jurisdictional issue, the Congressional intent of preventing the government from fighting the same case in two courts is not contravened, and the Claims Court has jurisdiction. *Id.* at 666. The Federal Circuit later vacated that decision and granted a motion for rehearing, *U.N.R. Indus., Inc. v. United States*, 926 F.2d 1109 (Fed.Cir.1990), *reh'g granted*, 926 F.2d 1109 (Fed.Cir.1990), leaving unresolved the issue of whether a pending suit must be dismissed before filing in the Claims Court. However, because the Federal Circuit specifically vacated its opinion supporting petitioner's argument, this court cannot say the Special Master was arbitrary or capricious in reaching the decision he did.

Under the arbitrary and capricious standard, the court may not overturn a decision of the Special Master simply because it might have decided the case differently. *Loe*, 22 Cl.Ct. at 432; *see also Volpe*, 401 U.S. at 416, 91 S.Ct. at 823–24; *Hyundai*, 899 F.2d at 1209. Although more than one interpretation of section 11(a) is possible, the court cannot rule that the one adopted

by the Special Master was unreasonable, as it is supported by both the language of section 12(a), and by relevant case law.

**III. This Court Need Not Rule on the Timeliness of Petitioner's Post-petition Dismissal.**

In his Order of Dismissal, the Special Master held that petitioner's post-petition dismissal of her civil claim did not meet the limitations period prescribed by section 11(a) of the Act. *See Carlson*, No. 90–839V, slip op. at 6. Section 11(a) requires that petitioner dismiss her civil action within two years of the Act's effective date. 42 U.S.C. § 300aa–11(a)(5). Petitioner argued that the Special Master erred in ruling Petitioner's dismissal untimely because he used October 1, 1988, as the effective date of section 11(a), rather than December 19, 1989, the date on which Congress last amended section 11(a). Petitioner argued that the effective date of a statute should be the date of its last amendment. Respondent contended that the date of the last amendment should be used only when the amendment results in substantive changes to the statute, but cited no support for this proposition.

The court, however, need not rule on the validity of the position of either party, because the issue of whether petitioner's dismissal was timely is not relevant to the outcome of the case. Under the Special Master's interpretation of the Act, petitioner had to dismiss her civil action *before* filing a claim in the Claims Court. Petitioner's failure to do this deprives this court of jurisdiction to hear the case. Therefore, the timeliness of petitioner's post-petition dismissal is irrelevant.

CONCLUSION

Although the court sympathizes with petitioner's position of being denied a remedy for failing to comply with what may seem to be a technicality, it may not undo the language crafted by Congress, or overrule a decision of the Special Master that clearly is consistent with that language. In its 1989 amendment to section 11(a), Congress clearly manifested its intent to have all

applicants dismiss their civil actions before seeking a remedy under the Act. While the 1988 version might have been less clear, the 1989 amendment was in place for almost eight months before petitioner filed her action. Consequently, petitioner cannot complain that the Act was ambiguous regarding the procedures she should have followed. Petitioner failed to act in compliance with the statute's clear mandate and must, unfortunately, bear the consequences of that mistake.

The decision of the Special Master is AFFIRMED.

IT IS SO ORDERED.