**Jay BLACKMON, et al., Plaintiffs,**

v.

**AMERICAN HOME PRODUCTS CORPORATION d/b/a/ Wyeth, Inc., et al., Defendant.**

**No. G–02–179.**

United States District Court,
S.D. Texas,
Galveston Division.

June 2, 2004.

Peter Andersen Moir, Quilling Selander et al., C. Andrew Waters, Walter & Kraus, Tanja Karin Martini, Hermes Sargent et al., Dallas, TX, for Plaintiffs.

Michael R. Klatt, Clark Thomas and Winters, Susan E. Burnett, Clark Thomas & Winters, Austin, TX, Daniel J. Thomasch, Orrick Herrington et al., Lauren S Elliot, Orrick Herrington et al, New York City, Rebecca Jo Reser, Davidson & Trolilo, San Antonio, TX, Jeanne E. Walker, Faegre & Benson LLP, Russell O. Stewart, Faegre & Benson LLP, Denver, CO, John R. Gilbert, Gilbert & Moore PLLC, John Ralph Gilbert, Gilbert & Moore PLLC, Angleton, TX, Sandra Lynn Phillips, Baker Hostetler LLP, Houston, TX, Douglas W. Poole, McLeod Alexander et al., Galveston, TX, Andrew See, Shook Hardy LLP, Kansas City, MO, Diana L. Panian, Gardere Wynne et al., Houston, TX, Deborah A. Moeller, Shook Hardy et al., Kansas City, MO, Erik V. Larson, Preis Kraft and Roy, Houston, TX, Jeffery A. Kruse, Shook Hardy et al., Kansas City, MO, Marc A. Sheiness, Sheiness Scott et al., Barclay A. Manley, Fulbright & Jaworski, Richard L. Josephson, Baker & Botts, Houston, TX, David Michael Macdonald, McCauley Macdonald & Devin, Dallas, TX, John Wesley Raley, III, Cooper & Scully, Houston, TX, John A. Scully, Cooper & Scully, Dallas, TX, Stephen Robert Lewis, Jr., Lewis & Williams, Galveston, TX, for Defendants.

Kim Parker, Splendora, TX, Pro se.

Alan R. Strauss, Houston, TX, Pro se.

Tracy D. Strauss, Houston, TX, Pro se.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

KENT, District Judge.

Plaintiffs Jay Blackmon and Kendel Blackmon, individually and as next friends

of their minor child Todd Christopher Blackmon; Norman Keuhn and Melissa Keuhn, individually and as next friends of their minor child Brandon Hilton Keuhn; and Tim Scott and Sharon Scott, individually and as next friends of their minor child Colby Brennan Scott, bring this state-law products liability suit against Defendants Aventis Pasteur, Inc. ("Aventis"), the Dow Chemical Company ("Dow"), Eli Lilly & Company ("Eli Lilly"), EM Industries, Inc., individually and as successor in interest to Emerck ("EM"), GDL International, Inc. ("GDL"), GlaxoSmithKline, individually and as successor in interest to Smith Kline Beecham Corporation ("Smith Kline"), Merck & Company, Inc. ("Merck"), Sigma–Aldrich Corporation, individually and as successor in interest to Sigma Aldrich, Inc. ("Sigma"), Spectrum Chemical Manufacturing ("Spectrum"), and Wyeth. Now before the Court comes the Motion to Dismiss with Prejudice filed by Defendants Wyeth, Aventis, Merck, and Smith Kline ("the Vaccine Defendants"). For the reasons stated below, the Motion is hereby **GRANTED**.

## I. Background and Facts

While they were infants, Todd Blackmon, Brandon Keuhn, and Colby Scott were allegedly exposed to harmful levels of mercury through routine childhood vaccinations administered to them by their pediatricians. All or some of the vaccines contained thimerosal, a mercury-laden preservative. At that time, vaccine manufacturers routinely added thimerosal to multiple-use vials of vaccines to extend each vial's shelf life. The thimerosal (and with it, mercury) introduced into the children's bodies by way of vaccination allegedly afflicted them with serious and lasting neurological injuries.

Plaintiffs filed this action in a Texas state court seeking damages for the children's personal injuries, both individually and as legal representatives of their children. In their Original Petition, Plaintiffs assert four causes of action—strict liability, negligence, gross negligence, and conspiracy—against two groups of Defendants: (1) the manufacturers of thimerosal-containing vaccines—the Vaccine Defendants; and (2) the manufacturers of Thimerosal itself—Eli Lilly, EM, Sigma, Dow Spectrum, and GDL ("Chemical Defendants"). Defendants removed the case pursuant to the Court's diversity jurisdiction.

On March 3, 2003, the Court Granted the Vaccine Defendants' Motion to Abate Proceedings and Ordered that the case be administratively stayed pending the resolution of Plaintiffs' claims before the Vaccine Court as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–1 *et seq.* ("the Vaccine Act"). Pursuant to the Court's Order Conditionally Granting Plaintiffs' Motion to Dissolve Stay and Granting Leave to File Amended Complaint, the administrative stay was dissolved on December 31, 2003. Plaintiffs filed their Amended Complaint on January 5, 2004, asserting claims of strict liability, negligence, gross negligence, fraud, and conspiracy. The Vaccine Defendants filed their Motion to Dismiss with Prejudice on January 13, 2004, asserting that the claims asserted on behalf of Minor Plaintiffs Todd Christopher Blackmon and Brandon Hilton Kuehn are barred by Plaintiffs' failure to file timely petitions in the Vaccine Court. The Vaccine Defendants also urged dismissal of Plaintiffs' individual state-law claims for loss of consortium, loss of services, emotional distress, and medical expenses incurred on behalf of the Minor Plaintiffs. Plaintiffs timely responded, arguing that the Vaccine Act's limitations provision does not bar their claims, and if it does, it violates Plaintiffs' rights to due process, equal protection, and trial by jury.

## II. Legal Standard

A party is entitled to dismissal under Rule 12(b)(6) when an opposing party fails

to state a claim upon which relief may be granted. In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *See* Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint and views them in the light most favorable to the plaintiff. *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000) (noting that a court must construe the complaint liberally in favor of the plaintiff); *see also Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir. 1993). "A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Collins,* 224 F.3d at 498. A motion to dismiss should be granted only when it appears without a doubt that a plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984))); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

## III.  Analysis

### A.  Claims Subject to the Vaccine Act

The "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken. Use of vaccines has prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease." H.R.Rep. No. 99–908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. While most children enjoy measurable benefit from immunization programs, "a small but significant number have been gravely injured." *Id.* Two significant concerns accompany these vaccine-related injuries: the inconsistency, expense, delay, and unpredictability of the tort system in compensating claims of vaccine-injured children; and the instability and uncertainty of the childhood vaccine market inevitably caused by the risks of tort litigation. *See id.* at 7, 186 U.S.C.C.A.N. at 6348. The National Vaccine Injury Compensation Program ("Program") was designed to ameliorate these concerns. The Program provides an avenue of recovery for injuries and deaths traceable to vaccinations that works with greater ease and on a faster timetable than the civil tort system. *See Shalala v. Whitecotton,* 514 U.S. 268, 269, 115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). In effect, it "ensure[s] that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R.Rep. No. 99–908 at 4, 1986 U.S.C.C.A.N. at 6345–46, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby ... keeps manufacturers in the market." *Schafer v. Am. Cyanamid Co.,* 20 F.3d 1, 4 (1st Cir.1994).

The Program, set forth in the Vaccine Act, requires that vaccine-related claims be heard initially by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally, and accorded expeditious review. *See Whitecotton,* 514 U.S. at 270, 115 S.Ct. at 1478. This system streamlines the claims process by establishing standards of proof under which individuals who suffer injuries within specified intervals after the administration of a vaccine benefit from a presumption that the vaccine caused their in-

juries. *See* 42 U.S.C. §§ 300aa–11(c)(1)(C)(i), –13(a)(1), –14; *Haggerty v. Wyeth Ayerst Pharm.*, 79 F.Supp.2d 182, 184 (E.D.N.Y.2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant first files a timely petition in accordance with the Program's guidelines.[1] *See* 42 U.S.C. § 300aa–11(2)(A); *Whitecotton*, 514 U.S. at 270, 115 S.Ct. at 1478 (explaining that a claimant alleging an injury after the Vaccine Act's effective date "must exhaust the Act's procedures ... before filing any *de novo* civil action in state or federal court"). If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhaustion of his or her remedies under the Vaccine Act, the Court must dismiss the action. *See* 42 U.S.C. § 300aa–11(a)(2)(B). Simply put, individuals who qualify as Program claimants *must* file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all.[2]

### 1. The Limitations Provision

■ The Vaccine Act requires claimants to file a petition for compensation under the Vaccine Program as a condition precedent to filing a civil suit against a vaccine manufacturer or administrator. *See* 42 U.S.C. § 300aa–11(a)(2)(A).[3] The Vaccine Act provides that "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42 U.S.C. § 300aa–16(a)(2). As this Court has noted, the discovery rule does not apply to the Act's limitations period, and the Act does not provide for equitable tolling. *See Strauss v. Am. Home Prods. Corp.*, 208 F.Supp.2d 711, 716 n. 10 (S.D.Tex.2002) (citing *Brice v. Sec'y of Health & Human Services*, 240 F.3d 1367, 1373 (Fed.Cir.2001)). If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court must dismiss the action. *See* 42 U.S.C. § 300aa–11(a)(2)(B). Thus, with certain exceptions not applicable to this case, individuals who qualify as Program claimants must first file petitions in the Vaccine Court, or their claims

1. A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury" or the legal representative of such person. 42 U.S.C. § 300aa–11(b)(1)(A).

2. There are a few exceptions. *De minimis* claims for less than $1,000 may be brought in state or federal courts without prior filing under the Vaccine Program. *See* 42 U.S.C. § 300aa–11(a)(2)(A). However, the Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages (such as the instant lawsuit) comply with the procedures established under the Program. *See id.*

3. The provision reads in full:

No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a

State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed, in accordance with section 300aa–16 of this title, for compensation under the Program for such injury or death and—
(i)(I) the United States Court of Federal Claims has issued a judgment under section 300aa–12 of this title on such petition, and
(II) such person elects under section 300aa–21(a) of this title to file such an action, or
(ii) such person elects to withdraw such petition under section 300aa–21(b) of this title or such petition is considered withdrawn under such section.
42 U.S.C. § 300aa–11(a)(2)(A).

against vaccine manufacturers and administrators will be forever barred.

Defendants move to dismiss the claims asserted by Todd Christopher Blackmon and Brandon Hilton Keuhn (the "Minor Plaintiffs"), as well as the claims of Jay and Kendel Blackmon, Norman and Melissa Kuehn, and Tim and Sharon Scott (collectively "Plaintiffs")[4] for failure to comply with the requirements of the Vaccine Act. Specifically, Defendants argue that because Plaintiffs failed to file timely compensation petitions in the Vaccine Court— a point that Plaintiffs concede—their current claims are barred by the Vaccine Act.

Plaintiffs argue in response that their respective lawsuits are not barred by their failure to file timely compensation claims with the Vaccine Court. Plaintiffs maintain that because they failed to file petitions in the Vaccine Court within the limitations period, they are not "qualified" to file petitions. Because they were not "qualified" to file petitions, Plaintiffs argue, they are not bound by the statute of limitations or by the filing requirements of the Vaccine Act. In short, Plaintiffs argue that because they failed to comply with the statute of limitations, they are not bound by it; in other words, that a vaccine claimant may defeat the limitations provision by violating it. This novel argument is based on the language of 42 U.S.C. § 300aa(11)(a)(9), which provides that § 300aa(11) "applies only to a person who has sustained a vaccine-related injury or death and is qualified to file a petition under the Program." Plaintiffs argue that a claimant who fails to file a petition within the 36 month period is not "qualified to file a petition" under the plain meaning of the phrase, because he or she is barred by the limitations provision.

It is well-settled that statutory interpretation begins with the "plain language" of the statute. *See, e.g., Aviall Servs., Inc. v. Cooper Industries, Inc.,* 312 F.3d 677, 680 (5th Cir.2002) (en banc). But the plain meaning rule does not obligate courts to read statutory language out of context. *See, e.g., K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). The plain language should not be construed to produce an absurd result, *see id.* (citing *United States v. A Female Juvenile,* 103 F.3d 14, 16–17 (5th Cir.1996) ("Axiomatic in statutory interpretation is the principle that laws should be construed to avoid an absurd or unreasonable result.")), nor should a statute be construed in a manner that renders any one provision superfluous. *See, e.g., Wadsworth v. Johnson,* 235 F.3d 959, 963 (5th Cir.2000) ("As a matter of statutory interpretation, we do not read one section so as to render another section superfluous.") (citing *Freytag v. Comm'r of Internal Revenue,* 501 U.S. 868, 876, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991)); *United States v. Marek,* 198 F.3d 532, 536 (5th Cir.1999) ("A statute should be interpreted so as to give each provision significance.").

Plaintiffs' interpretation of the Vaccine Act violates the "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Shalala v. Whitecotton,* 514 U.S. 268, 278, 115 S.Ct. 1477, 1482, 131 L.Ed.2d 374 (1995) (O'Connor, J., concurring) (quoting *Dep't of Revenue of Oregon v. ACF Industries, Inc.,* 510 U.S. 332, 340,

---

4. Defendants' Motion to Dismiss does not apply to the claims asserted on behalf of Colby

Brennan Scott.

114 S.Ct. 843, 848, 127 L.Ed.2d 165 (1994)). Plaintiffs' overbroad reading of the qualification provision would nullify the limitations provision and, with it, the Vaccine Act itself. Under Plaintiffs' interpretation, a potential claimant could avoid the Act's mandatory compensation scheme entirely by simply running out the 36–month clock. The plain language of the statute, together with the logical presumption that Congress intends its laws to have some effect, weighs conclusively against Plaintiffs' construction of the Vaccine Act.

Plaintiffs also rely on *Carlson v. Secretary of the Department of Health & Human Services,* 23 Cl.Ct. 788 (1991), for the proposition that claimants who are time-barred from filing a petition in Vaccine Court retain the right to pursue direct civil remedies. While the *Carlson* court permitted a time-barred claimant to pursue civil remedies elsewhere, the case cannot be stretched to preserve Plaintiffs' claims. In *Carlson,* an injured child filed a lawsuit in federal court before Congress passed the Vaccine Act. The child later filed a claim for compensation under the Program, but she abated the lawsuit in federal court rather than dismissing it as required by the Vaccine Act. Her compensation claim was dismissed by the Vaccine Court because she had a civil action pending in violation of the Vaccine Act. The claimant dismissed the civil action in district court and attempted to refile in Vaccine Court, but the statute of limitations had run, and her claim was dismissed as time-barred. Affirming the dismissal of her compensation petition, the court recognized that the petitioner could still pursue civil damages in district court, subject to any deficiencies raised therein. *Carlson,* 23 Cl.Ct. at 790. Unlike Plaintiffs, the claimant in *Carlson* had filed a civil action in federal district court before the effective date of the Vaccine Act. Because the claimant's vaccine was administered before the effective date of the Act, the Act did not require her to

file a petition before pursuing tort claims. *See* 42 U.S.C. § 300aa–11(a)(2)(A). Because the vaccinations at issue in Plaintiffs' claims were administered after October 1, 1988, the Act required them to file a petition before pursuing tort claims.

Finally, Plaintiffs argue that the Court must adopt their interpretation of the Vaccine Act to avoid constitutional difficulties. Plaintiffs begin with the proposition that "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' [courts] are obligated to construe the statute to avoid such problems." *INS v. St. Cyr,* 533 U.S. 289, 299–300, 121 S.Ct. 2271, 2279, 150 L.Ed.2d 347 (2001) (citation omitted) (quoting *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932)); *see also Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 345–48, 56 S.Ct. 466, 482–84, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (outlining the rules governing consideration and avoidance of constitutional questions). Plaintiffs' reliance on the canon of constitutional avoidance stumbles on the basic requirement that the proposed alternative interpretation be "fairly possible." As explained above, Plaintiffs' proposed interpretation of the Vaccine Act is untenable. The canon of constitutional avoidance neither requires nor permits the federal courts to gut federal statutes to avoid constitutional questions.

The Court commends Plaintiffs' valiant efforts to avoid a truly unfortunate result through creative and novel arguments. For the reasons stated above, however, the Court concludes that Defendants' interpretation of the Vaccine Act must prevail as a matter of statutory interpretation and simple logic. Concluding that the Vaccine Act's limitations provision bars Plaintiffs'

claims, the Court must proceed to Plaintiffs' constitutional objections.

### 2. Equal Protection

Plaintiffs maintain that the Vaccine Act violates the equal protection component of the Fifth Amendment, *see Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), because its three-year limitations provision discriminates against children with latent vaccine-related injuries. Plaintiffs contend that because the limitations provision of the Vaccine Act lacks a discovery rule and is triggered by the first vaccine-related symptom, it unlawfully distinguishes between children whose reaction is immediately apparent and those whose reaction is latent, subtle, or delayed. Plaintiffs contend that this distinction is unconstitutional because the group of children whose injuries cannot be easily traced to a vaccine are deprived of any opportunity for relief. Plaintiffs argue that the Act's effective distinction between children whose injuries can be readily traced to a vaccine and those whose injuries cannot is "hardly rational or just."

■ That the Vaccine Act's limitation provision imposes a hardship on a certain class of victims should come as no surprise. The natural effect of any law, especially a statute of limitations, is to discriminate—certain persons benefit, and certain persons suffer through the natural effects of state action. The pertinent question in an equal protection analysis is not merely whether a law discriminates, but whether it discriminates invidiously. Plaintiffs concede that the Vaccine Act's limitations provision is subject to rational-basis scrutiny. Under rational-basis review, "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Fitzgerald v. Racing Ass'n of Central Iowa*, 539 U.S. 103, 107, 123 S.Ct. 2156, 2159, 156 L.Ed.2d 97 (2003).

■ The Vaccine Act was motivated primarily by the need to maintain the enormously successful national vaccination program by ensuring that vaccines remained available on the market. The Act reflects a policy judgment by Congress that this legislative goal required some protection for vaccine manufacturers against tort suits. *See Schafer*, 20 F.3d at 4. The three-year limitations provision reflects Congress's decision to provide repose to vaccine manufacturers by limiting the time frame in which injured parties can pursue claims for vaccine-related injuries. There exists a clear, logical connection between the means employed—a neutral limitation on claims—and the legislative goal pursued—limitation of vaccine manufacturers' exposure to liability. Because the limitations provision is rationally related to a permissible legislative end, the Court concludes that the limitations provision consists with the equal protection component of the Fifth Amendment.

### 3. Due Process

Plaintiffs object to the Vaccine Act's limitations provisions on Fifth Amendment Due Process grounds, arguing that Plaintiffs did not know, and could not have known, that the Minor Plaintiffs' injuries were caused by their vaccinations until after the 36-month limitations period had expired. Plaintiffs point out that Thimerosal-related autism is a latent condition that often does not become symptomatic until months after vaccination. According to Plaintiffs, many months may pass between the appearance of symptoms and diagnosis, and also between diagnosis and the

determination that the disease is vaccine-related. Plaintiffs argue that because of the time delays inherent in the diagnosis of Thimerosal-related autism, Plaintiffs could not have brought their claims in good faith within the limitations period.

■ Plaintiffs begin with the sound proposition that a cause of action is a property interest protected by the Due Process Clause. *See Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Plaintiffs maintain that the Due Process Clause grants an aggrieved party the "opportunity to present his case and have its merits fairly judged." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). Plaintiffs contend that the Vaccine Act's limitations provision deprived them of the opportunity to present their claims on the merits. This is unquestionably true, but it does not amount to a violation of due process.

■ The Due Process Clause does not entitle every litigant to a hearing on the merits in every case. *See id.* at 437, 102 S.Ct. at 1158. The Supreme Court has noted that statutes of limitations "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter,* 101 U.S. (11 Otto) 135, 139, 25 L.Ed. 807 (1879), and that the government's "interest in a self-executing statute of limitations is in providing repose for potential defendants and in avoiding stale claims." *Tulsa Prof'l Collection Services v. Pope,* 485 U.S. 478, 486–87, 108 S.Ct. 1340, 1345–46, 99 L.Ed.2d 565 (1988). The same interest motivated Congress to impose a limitations period on potential Vaccine Act claimants. Indeed, the federal government's interest in limiting vaccine manufacturers' liability is arguably bolstered by the broad spectrum of potential vaccine-related injuries, some of which may pres-

ent inherently complex questions of causation.

■ A statute of limitations may nonetheless fail to clear the low hurdle of rational basis review if it is inherently unreasonable. Under rational-basis review, the plaintiff bears the burden of proving the limitations provision to be wholly arbitrary. *See Montagino v. Canale,* 792 F.2d 554, 557 (5th Cir.1986) (upholding Louisiana's three-year medical malpractice statute of limitations against a substantive due process challenge). The very nature of a limitations provision is to extinguish some claims before they are asserted, in some cases even before they accrue. *See, e.g., Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 555 (3d Cir.1985) ("Because statutory periods are in some sense arbitrary, the period to initiate suit occasionally expires before a claimant has sustained any injury ... or before the claimant knows he has sustained an injury ....") (citations omitted). Plaintiffs do not convince the Court that the Vaccine Act's three-year limitations provision is arbitrary or unreasonable. On the contrary, the limitations period is reasonably calculated to serve a permissible legislative goal, and it is therefore constitutional.

Plaintiffs' argument is further undermined by the fact that one of the Minor Plaintiffs, Colby Brennan Scott, managed to investigate and assert his claim within the limitations period. This leads the Court to believe that Plaintiffs' failure to file their claims within the limitations provision resulted not from the impossibility of discovering that their injuries were caused by vaccination, but by their own failure to conduct a timely investigation. While this is perhaps understandable, it is not so extraordinary as to raise suspicions about the limitations provision itself. The mere fact that certain victims fail to discover and file their claims before the limitations period expires, while regrettable,

does not render the limitation unreasonable.

Finally, to the extent that Plaintiff's argument relies on the absence of a discovery rule in the Vaccine Act's limitations provision, it ignores the plain language of the statute. Plaintiff cites *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), a products-liability case involving claims of silicosis caused by the inhalation of silica dust, to support its claim that the Court must read a discovery rule into the Vaccine Act. In *Urie*, the Court considered the limitations provision of the Federal Employers' Liability Act, which provided, "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." *See id.* at 169, 69 S.Ct. at 1024 (citing 45 U.S.C. § 56). The Supreme Court held that an injury did not accrue for purposes of the limitations provision until the injury manifested itself; that is, until the plaintiff began to show symptoms of silicosis. *See id.* at 170–71, 69 S.Ct. at 1024–25. The Vaccine Act incorporates a similar rule— the limitations period begins upon "the occurrence of the first symptom of manifestation of onset or of the significant aggravation" of a potential claimant's injury. 42 U.S.C. § 300aa–16(a)(2). Even assuming that the lack of a discovery provision would somehow render the Vaccine Act's limitations provision unreasonable, this is simply not the case—the limitations provision does not begin to run until the claimant discovers the injury.[5]

### 4. Seventh Amendment

■ Finally, Plaintiffs argue that the Vaccine Act violates their Seventh Amendment right to trial by jury to the extent that it bars their claims against the Vaccine Defendants. The Seventh Amendment provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII. The primary purpose of the amendment is to "preserve the right of jury trial as it existed in 1791." *Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974). But the Seventh Amendment does not recognize or create an unconditional right to present all common-law claims to a jury. The Seventh Amendment entitles litigants to a jury trial on claims within its ambit only to the extent that those claims are *viable*. For example, every plaintiff must survive summary disposition in order to reach a jury, but Rule 56 can hardly be said to infringe upon the Seventh Amendment right to jury trial. Similarly, it is well within congressional authority to abrogate common-law rights and remedies to the extent that they interfere or conflict with duly enacted regulatory schemes. *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26 (1989) ("Congress may effectively supplant a common-law cause of action carrying with it a right to a jury trial with a statutory cause of action shorn of a jury trial right if that statutory cause of action inheres in, or lies against, the Federal government in its sovereign capacity." (quoting *Atlas Roofing*, 430 U.S. at 458, 97 S.Ct. at 1270)); *see also Silver v. Silver*, 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929) (noting that the "Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by

---

5. Plaintiffs' suggestion that the limitations period cannot begin until a victim discovers the cause of the injury is not supported by the law. *See Rotella v. Wood*, 528 U.S. 549, 555, 120 S.Ct. 1075, 1081, 145 L.Ed.2d 1047 (2000) ("[I]n applying a discovery accrual rule, we have been at pains to explain that the discovery of an injury, not discovery of the other elements of a claim, is what starts the clock.").

the common law, to obtain a permissible legislative object").

■ Plaintiffs' Seventh Amendment argument ignores the distinction between assigning common-law claims to a non-jury tribunal and creating novel statutory claims subject to administrative resolution. The Supreme Court captured this distinction in *Granfinanciera:* "Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as factfinders. But it lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury." *Granfinanciera*, 492 U.S. at 51–52, 109 S.Ct. at 2795. The Vaccine Act does not purport to assign a claimant's common-law claims to an administrative tribunal. Only the Program petition must be filed in an administrative court. Provided that claimants comply with the requirements of the Vaccine Act, they remain free to present common-law claims to a jury.

■ Congress may assign the resolution of statutory rights to an administrative tribunal if the rights are public in nature. Typically, public-rights claims arise out of a controversy between an individual and the government. However, cases between private parties may involve public rights when "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, ... create[s] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Thomas v. Union Carbide Agr. Prods., Inc.*, 473 U.S. 568, 593–94, 105 S.Ct. 3325, 3339–40, 87 L.Ed.2d 409 (1985), *quoted in Granfinanciera*, 492 U.S. at 54, 109 S.Ct. at 2797. In the Vaccine Act, Congress created a novel right to no-fault compensation before

the Vaccine Court. This administrative remedy furthers the articulated public policy of preserving the national vaccination program—a major public health initiative—by encouraging injured parties to seek administrative remedies rather than pursue common-law claims against vaccine manufacturers. Like the regulations at issue in *Thomas*, the Vaccine Act "serves a public purpose as an integral part of a program safeguarding the public health." *Id.* at 589, 105 S.Ct. at 3337. The Court therefore has no doubt that the Vaccine Act satisfies the requirements of Article III.

Congress's power to direct certain claims to an administrative tribunal includes the power to place limits on the ability of parties to present their claims. To the extent that a claimant's failure to comply with the requirements established by Congress to present administrative claims prejudices or eliminates his rights to assert common-law claims, this is a necessary consequence of the limits set by Congress in the exercise of its authority to create the new cause of action. The limitations provision and the corresponding bar on common-law claims are key components of the Vaccine Act. Both are necessary to its intended operation and to the preservation of the national vaccination program. Provided that Congress acts within its constitutional authority in creating the cause of action and establishing the administrative process, a claimant's loss of his right to a jury trial on related common-law claims does not violate his Seventh Amendment right to trial by jury. Because Congress acted within the limits of Article III in designing the Vaccine Act's administrative remedies, and because the bar on tort claims is necessary to the purpose of the Act, the Court finds that the Act does not violate the Seventh Amendment.

## B. Residual State–Law Claims

In the Court's previous Order, issued May 8, 2003, the Court dismissed Plaintiffs' individual claims for loss of services and emotional distress under Texas law. *Blackmon v. Am. Home Prods. Corp.*, 267 F.Supp.2d 667, 676–77 (S.D.Tex. 2003). The Court denied the Motion to Dismiss insofar as it addressed Plaintiffs' state-law claims for loss of consortium. *See id.* The Court relied, among other cases, upon *Roberts v. Williamson*, 52 S.W.3d 343, 352 (Tex.App.—Texarkana 2001), which recognized a parent's right to receive compensation for the "loss of love and companionship" of his or her child. The Texas Supreme Court has since reversed *Roberts*, holding that parental claims for loss of consortium of a child in non-fatal injury cases are not cognizable under Texas law. *See Roberts v. Williamson*, 111 S.W.3d 113, 118 (Tex.2003). Accordingly, Plaintiffs can no longer state a claim for loss of consortium under Texas law.

Finally, Plaintiffs cannot state a valid claim to recover damages for medical expenses incurred on behalf of the Minor Plaintiffs. As the Court explained in *Strauss*, the Vaccine Act provides compensation for actual and projected expenses which "have been or will be incurred by or on behalf of the [victim] . . . for rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and services expenses, and facilities determined to be reasonably necessary." *Strauss*, 208 F.Supp.2d at 715 n. 8 (citing 42 U.S.C. § 300aa–15(a)(1)). To permit Plaintiffs to pursue claims for such expenses when they failed to do so in the Vaccine Court would undermine the stated objectives of the Vaccine Act. *See id.* Because Plaintiffs cannot assert claims for loss of services, emotional distress, loss of consortium, or individual claims for damages in the amount of medical expenses incurred on behalf of the Minor Plaintiffs, the Motion to Dismiss Plaintiffs' individual state-law claims is hereby **GRANTED**.

## IV. Conclusion

For the reasons stated above, the Vaccine Defendants' Motion to Dismiss is hereby **GRANTED**. The Vaccine Act claims asserted by Jay and Kendel Blackmon and Norman and Melissa Keuhn, as well as Plaintiffs' state-law claims, are hereby **DISMISSED WITH PREJUDICE**. Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED**